Jose MARISCAL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–9701–CR–10.

Court of Appeals of Indiana.

Nov. 24, 1997.

Rehearing Denied Jan. 14, 1998.

Transfer Denied March 18, 1998.

John (Jack) F. Crawford, Crawford & Rader, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Jose Mariscal appeals his conviction of voluntary manslaughter, a Class A felony.[1]

We affirm.

### ISSUES

Mariscal raises three issues, which we restate as:

1. Whether the trial court erred in allowing a witness to give an opinion about the confrontation between Mariscal and his victim.

2. Whether the State presented sufficient evidence to rebut Mariscal's self-defense claim.

3. Whether Mariscal was prejudiced by the manner in which the trial court provided an interpreter for him.

### FACTS AND PROCEDURAL HISTORY

On the evening of December 9, 1995, Mariscal, Jose Barboza, and Jesus Flores went to an Indianapolis bar. At the bar, the three drank together until Mariscal and Barboza began to argue. The three then left the bar.

---

1. Ind.Code 35–42–1–3.

Outside the bar, an altercation ensued between Mariscal and Barboza. The altercation was witnessed by Flores, as well as by James and Carrie Likens, who were passing by at the time. The altercation ended with Barboza bleeding from knife wounds to the chest.

Mariscal fled the scene and James called the police. Barboza was dead on arrival at a nearby hospital. He died from six knife wounds to the left side of his chest. Two immediately fatal wounds had entered his heart.

Mariscal was arrested and charged with murder. The jury convicted him of voluntary manslaughter, and the trial court sentenced him to forty years imprisonment. He now appeals.

### DISCUSSION AND DECISION

### I. WITNESS TESTIMONY

Mariscal contends that the trial court abused its discretion in allowing James Likens to testify that he told a police officer at the scene that Mariscal "probably stabbed himself in the leg or the hip and that he would be injured." (R. 541). Mariscal specifically argues that Likens did not qualify to give an expert opinion under Ind.Evid. Rule. 702 or to give a lay opinion under Ind.Evid. Rule 701.

■ Before giving his opinion about Mariscal's possible injuries, James testified that he was employed as a security guard and that he served as a reserve police officer. He also testified that he received training in how to conduct investigations. He further testified that he was part-owner of a martial arts business, had taught "combative arts" since 1989, and had refereed in numerous combat tournaments. This testimony, while not sufficient to qualify James as an expert in knife fights under Evid.R. 702, is sufficient to establish James as a "skilled witness" whose opinion may be helpful to the jury under Evid.R. 701. *See* 13B Miller, *Indiana Evidence* at 196 (1996) (defining a "skilled witness" as a person with "a degree of knowledge short of that sufficient to be declared an expert under Rule 702, but somewhat beyond that possessed by the ordinary jurors").

■ In order to be admissible under Evid.R. 701, opinion testimony of a skilled witness or a lay person must be "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." The requirement that the opinion be "rationally based" on perception "means simply that the opinion must be one that a reasonable person normally could form from the perceived facts." Miller at 195. The requirement that the opinion be "helpful" means, in part, that the testimony gives substance to facts which were difficult to articulate. *Id.* at 196. The admission of opinion testimony is within the trial court's discretion. *Kent v. State*, 675 N.E.2d 332, 338 (Ind.1996).

James's opinion concerning the possibility of injury to Mariscal's leg or hip is based upon his observation that when Mariscal made stabbing motions that missed Barboza, his hand did not go past his body. In other words, Mariscal stabbed himself when he missed Barboza. James's testimony could be characterized as helpful to the jury because it explained what James meant when he testified earlier that the "[stabbing] motions ended before they went past [Mariscal's] body." (R. 519). We cannot say that the trial court abused its discretion in allowing James to give his opinion.

■ Mariscal contends that James could not have made an accurate assessment in the short time (twelve seconds) that he observed the fight, and that the trial court therefore abused its discretion in allowing him to give opinion testimony. The length of James's observation goes to the weight of his opinion, not to its admissibility.

Citing *Harrison v. State*, 644 N.E.2d 1243, 1251 (Ind.1995), *cert. denied* —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996), Mariscal contends that James's testimony was inadmissible because the State did not lay a foundation, and "[o]ur [s]upreme [c]ourt has made it clear that expert scientific testimony is no longer admissible under this Rule [Evid.R. 702] in Indiana unless the court is satisfied that the scientific principles upon which the testimony rests are reliable." Ap-

pellant's Brief at 9–10. *Harrison* is inapplicable here as James was not testifying as an expert under Evid.R. 702 and his opinion was not "scientific testimony."

■ Mariscal also contends that the trial court abused its discretion in allowing James to give an opinion on the type of knife used in the attack. He further contends that the trial court abused its discretion in allowing James to opine that Mariscal was "thrusting" at Barboza, who was in a "defensive position." Mariscal failed to cite to the record and to make cogent argument on these contentions. Thus, he has waived the contentions. *See Marshall v. State,* 621 N.E.2d 308, 318 (Ind.1993).

## II. SUFFICIENCY

■ Mariscal contends that the State failed to present evidence sufficient to disprove his self-defense claim. A valid claim of self-defense is legal justification for an otherwise criminal act. *Martin v. State,* 512 N.E.2d 850, 851 (Ind.1987). Once the defendant asserts a claim of self-defense, the State bears the burden of disproving the existence of one of the elements of the claim. *Id.* These elements are (1) the defendant was in a place where he had a right to be; (2) the defendant acted without fault; and (3) the defendant had a reasonable fear of death or great bodily harm. *Id.* The State may rebut a claim of self-defense by affirmatively showing that the defendant did not act to defend himself or by relying on the evidence elicited in the case-in-chief. *Lilly v. State,* 506 N.E.2d 23, 24 (Ind.1987).

■ Whether the State has disproved a self-defense claim is a question for the fact finder. *Pointer v. State,* 585 N.E.2d 33, 36 (Ind.Ct.App.1992). In assessing whether the State introduced sufficient evidence to disprove a defendant's claim of self-defense, we look only to the evidence most favorable to the State and the reasonable inferences to be drawn therefrom. *Bowling v. State,* 493 N.E.2d 783, 785 (Ind.1986). We neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.*[2] A defendant's conviction, despite a claim of self-defense, will not be reversed unless no reasonable person could say that the State had negated the claim beyond a reasonable doubt. *Pointer,* 585 N.E.2d at 36.

In the present case, Mariscal contends that the State's evidence shows only that he was trying to defend himself against Barboza. He further contends that the need for this defense is evidenced by stab wounds to his leg and thigh, wounds that could only be caused by a knife wielded by Barboza.

■ A review of the State's evidence shows that Flores, Carrie Likens, and James Likens all testified that they observed Mariscal and Barboza pushing each other. Barboza then retreated as Mariscal moved toward him. Mariscal then grabbed Barboza by the collar of his shirt and began striking Barboza while Barboza remained in a defensive position. Barboza did eventually attempt to defend himself, and managed to land at least two punches. He was able to knock Mariscal down at one point, but he appeared to do so to effect his escape. None of the witnesses observed Barboza wield a knife or make stabbing motions. On the other hand, at least one of the witnesses saw Mariscal continue to thrust or stab at Barboza while Barboza was in a defensive position and make apparent "stabbing" motions against an unarmed Barboza. Furthermore, James observed that knife wounds on Mariscal's leg and thigh were inflicted by Mariscal when he missed Barboza.

The State's evidence is sufficient to support a jury determination that even though Barboza was involved in the initial pushing, he was attempting to retreat at the time Mariscal attacked him with the knife. The evidence is also sufficient to support a jury determination that Barboza was unarmed and that the blows he landed were for the purpose of defending himself and effecting his escape from his knife-wielding attacker. In short, the evidence was sufficient to support a jury determination that Mariscal was not acting in self-defense at the time he

2. Mariscal attempts to discredit the testimony of the State witnesses. This is an invitation to reweigh the evidence, which we will not do.

stabbed Barboza. *See Jones v. State*, 491 N.E.2d 999, 1000 (Ind.1986) (holding that the validity of the defendant's self-defense claim was an issue for the jury where the victim retreated after starting an altercation).

■ Furthermore, the use of deadly force as a form of self-defense is only justified where a person reasonably believes that such force is necessary to prevent death or serious bodily injury to himself. Ind.Code 35–41–3–2(a); *Pinegar v. State*, 553 N.E.2d 525, 526 (Ind.Ct.App.1990), *trans. denied.* Here, the evidence was sufficient to support a jury determination that even if Barboza was not retreating and that his punches were not made to effect his escape, use of deadly force was not reasonably necessary. Mariscal was considerably bigger than the unarmed Barboza, and he had a clear path to escape.

## III. APPOINTMENT OF AN INTERPRETER

·The record reflects that Mariscal speaks little English and that he required the services of an interpreter during the proceedings. Mariscal contends that the trial court committed reversible error in not qualifying the interpreter as an expert under Evid.R. 604.

■ Evid.R. 604 states that "[a]n interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation to make a true translation." Qualification as an expert is governed by Evid.R. 702, which provides that an expert is one who is qualified by "knowledge, skill, experience, training, or education" to assist the trier of fact in understanding evidence or determining a fact in issue. To qualify as an expert, an interpreter must have "specialized knowledge in the language or particular form of communication sufficient to assist the trier of fact to understand the evidence." 13B Miller, *Indiana Evidence* at 139 (1996). Logically, Evid.R. 604 applies only when an interpreter is used to assist the trier of fact; it does not apply where the interpreter is used to translate court proceedings to a party. *See* 13 Miller, *Indiana Evidence* § 604.102

(1995). Due to the importance of the interpreter's function in translating court proceedings to a party, however, we hold that the establishment of the interpreter's qualifications and the administration of an oath or affirmation is necessary.

■ The use of an interpreter to translate court proceedings to a party is mandated by case law. The denial of an interpreter to a non-English speaking criminal defendant violates the due process clause of the fourteenth amendment to the United States Constitution. *Martinez Chavez v. State*, 534 N.E.2d 731, 737 (Ind.1989). An interpreter enables a non-English speaking defendant to understand the trial, provides a means of communication between the defendant and his attorney, and translates the defendant's testimony if he testifies. *Id.* It follows from the importance of the interpreter's task that he should possess the requisite ability to properly translate the proceedings for the benefit of the defendant. Accordingly, the trial court should examine the interpreter on the record to insure that he possesses the necessary qualifications. The court should also administer an oath or affirmation that the interpreter will make a true translation.

■ In the present case, the trial court administered an oath to the interpreter, Mr. Diaz. The court did not, however, inquire into Diaz's qualifications. Mariscal did not object to the procedure the trial court used to appoint Diaz, and he did not object to the court's use of Diaz. In fact, one of Mariscal's attorneys affirmatively consented to the use of Diaz as an interpreter. In *United States v. Miller*, 806 F.2d 223, 224–25 (10th Cir. 1986), a case we find to be instructive, the court held that a defendant who not only did not object, but also affirmatively consented to the appointment of an interpreter, waived the issue of the suitability of the appointment of the interpreter. The court further held that the giving of affirmative consent by Miller's attorney negated Miller's "fundamental error" argument.[3] *Id.* at 224. We apply the *Miller* holding to the present case and hold both that the issue is waived and that no fundamental error is present.

---

**3.** The court denominated fundamental error as    "plain error."

*CONCLUSION*

The trial court did not err in allowing James to give an opinion which assisted the jury in understanding his testimony. Also, the State's evidence was sufficient to support a jury determination that Mariscal did not kill Barboza in self-defense. Finally, there was no error in the manner in which the proceedings were interpreted.

Affirmed.

DARDEN and BAKER, JJ., concur.