Farrell HAYCRAFT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 31A01–0103–CR–101.

Court of Appeals of Indiana.

Dec. 28, 2001.

Rehearing Denied Feb. 7, 2002.

I. whether the prosecutor committed misconduct;

II. whether the trial court properly admitted the testimony of a child witness;

III. whether the trial court properly admitted the testimony of an investigating officer;

IV. whether Haycraft received ineffective assistance of counsel; and

V. whether his 190 year sentence is manifestly unreasonable.

Matthew Jon McGovern, Louisville, KY, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-defendant Farrell Haycraft ("Haycraft") appeals his convictions and 190 year sentence for four counts of child molesting[1] as Class A felonies, one count of child molesting[2] as a Class C felony, two counts of obscenity before a minor,[3] Class D felonies, and one count of contributing to the delinquency of a minor[4] as a Class A misdemeanor. We affirm his convictions and remand with instructions to revise his sentence to 150 years.

### Issues

Haycraft raises five issues for our review, which we restate as follows:

### Facts and Procedural History

The relevant facts most favorable to the convictions reveal that during the summer of 2000, twelve-year-old A.M. and his eight-year-old brother, W.M., stayed with Haycraft, their forty-nine year-old grandfather, for extended periods of time. Haycraft lived with his life partner, Bob Sutton ("Sutton"), in Harrison County, Indiana. During the course of the summer, Haycraft inserted his penis and finger in A.M.'s anus, performed oral sex on A.M. and required A.M. to perform oral sex on him, furnished A.M. with alcoholic beverages and allowed A.M. to drive his truck, showed A.M. pornographic movies, and engaged in oral sex with Sutton in front of A.M. and W.M., who was often present during the abuse.

A.M.'s grandmother, Haycraft's ex-wife, suspected that Haycraft was abusing A.M. and reported her suspicions to her daughter, A.M.'s mother. A.M.'s mother contacted Detective Charley Scarber ("Scarber") of the Indiana State Police, and the State filed charges against Haycraft on August 25, 2000. On August 28, 2000, Scarber interviewed Haycraft and obtained a taped confession from him. On

---

1. IND.CODE § 35–42–4–3(a).

2. *Id.* § 35–42–4–3(b).

3. *Id.* § 35–49–3–3.

4. *Id.* § 35–46–1–8.

January 19, 2001, a jury found Haycraft guilty as charged, and the trial court subsequently sentenced him to 190 years' imprisonment.

## Discussion and Decision

### I. Prosecutorial Misconduct

■ Haycraft argues that the State violated his Fifth Amendment right against self-incrimination. In her closing argument, the prosecutor stated:

You've got [W.M.], and [A.M.], and more importantly, if you don't believe these two children because somehow they're less credible, then we have him (indicating). He tells you—He tells you that they did that as well in his confession. . . . .—So, if you don't believe [A.M.], then do you believe [A.M.] and [W.M.]? And if you don't believe them, how about him (indicating)? He told you it happened at least three times in his confession. So, you've got three people, nothing to controvert, no evidence to controvert those three people.

■ Generally, when a prosecutor makes a statement that the jury could reasonably interpret as an invitation to draw an adverse inference from the defendant's silence, the defendant's Fifth Amendment privilege against compulsory self-incrimination is violated. *Taylor v. State*, 677 N.E.2d 56, 60 (Ind.Ct.App.1997), *trans. denied.* If in its totality, however, the prosecutor's comment addresses evidence other than the defendant's failure to testify, we will not reverse. *See id.* "When the challenged language is not a direct comment on the defendant's failure to testify, we must decide whether the comment amounts to a summary of the evidence, rather than an attempt to com-

ment on the defendant's silence." *Id.* Further, we have held that comments referring to the uncontradicted nature of the State's case do not violate defendants' Fifth Amendment rights. *Id.* However, the State may not "comment on the uncontradicted nature of [its] case . . . . where the defendant alone could have contradicted the government's case . . . ." *Rowley v. State*, 259 Ind. 209, 213, 285 N.E.2d 646, 648 (1972).[5]

Haycraft erroneously argues that only his testimony that he gave a false confession could have contradicted his confession. Our focus is not on whether Haycraft alone could have contradicted his confession, but whether he alone could have contradicted the government's case. *See id.* The facts indicate that both W.M. and Sutton were often present during the abuse, thereby making it possible for someone other than Haycraft to have contradicted the State's case. Finally, since the comment does not directly refer to Haycraft's failure to testify, we must determine whether it amounts to a summary of the evidence or an impermissible reference to Haycraft's silence. In its totality, the prosecutor referred to A.M.'s and W.M.'s testimony and to Haycraft's taped confession, which the State admitted into evidence. Thus, the comment summarized the evidence as a whole and did not constitute misconduct.

### II. Witness Competency

■ Haycraft argues that the State failed to establish that W.M. was competent to testify against him. However, Haycraft failed to object to W.M.'s competency after the State called W.M. to testify.[6] " 'Timely objection should be made to

---

**5.** Haycraft argues that the prosecutor was "referring to [Haycraft] as a witness and stating that [his] 'testimony' was uncontroverted as well." Because the record does not sup-

port such a characterization, we need not address this claim.

**6.** Haycraft filed a motion for a competency hearing as to both A.M. and W.M. on the first

any improprieties that may occur during the course of a trial so that the trial judge may be informed and may take effective action to remedy the error or grievance complained of.'" *Kochersperger v. State,* 725 N.E.2d 918, 922 (Ind.Ct.App.2000) (citations omitted). "A defendant's failure to object to a child's testimony acts as a waiver of any question of the competency of the child as a witness." *Id.* Thus, Haycraft's failure to offer a timely objection waives our review of this issue.

 Waiver notwithstanding, the trial court has the discretion to determine if a child witness is competent based on the judge's observation of the child's demeanor and responses to questions posed by counsel and the court. *Newsome v. State,* 686 N.E.2d 868, 873 (Ind.Ct.App. 1997). We require trial courts to establish that child witnesses are competent to testify by demonstrating that they (1) understand the difference between telling a lie and telling the truth, (2) know they are under a compulsion to tell the truth, and (3) know what a true statement actually is. *Id.*

 Haycraft argues that the State did not establish that W.M. knew the difference between the truth and a lie because he was only able to articulate an example of the truth. However, this colloquy between the prosecutor and W.M. indicates otherwise:

Q: Okay. So, do you know what telling the truth means?

A. Yes.

Q: What does it mean?

A. Like I broke something and. . . .

Q: Like you broke something and what?

A. . . . . (Pause). Like I broke something and mom says, "Who did this?" And I did it.

Q: And if you told her you did it, would that be the truth or a lie?

A: Truth.

Q: Do you understand when the Judge asked you to raise your hand and said, "Tell the truth, the whole truth, nothing but the truth" that that meant you're under an oath to tell the truth?

A: Yes.

Q: Do you understand how important it is to tell the truth?

A: Yes.

Q: What happens if you don't tell the truth when you're at home?

A: Get in more trouble.

. . . .

Q: Well now, if you—If I told you that I had on a red dress today, would that be the truth or a lie?

A: A lie.

Q: Why would it be a lie?

A: Because you have on a green dress.

day of the trial. The trial court held hearing outside the jury's presence to determine A.M.'s competency. Before W.M. testified, however, the trial court decided to hold a hearing in the jury's presence to determine W.M.'s competency, to which Haycraft responded, "All right." The trial court then decided that the prosecutor should question W.M. so that it did not look like the court was "trying to help the prosecutor in front of the jury. . . . ." Haycraft responded: "Okay." Haycraft correctly asserts that when competency is placed in issue, the trial court has a

duty to schedule a hearing to determine whether the witness is in fact competent to testify. *Hughes v. State,* 546 N.E.2d 1203, 1209 (Ind.1989). However, in *Russell v. State,* 540 N.E.2d 1222 (Ind.1989), our supreme court held that harmless error occurs when a child witness's competency is later established through thorough cross-examination. *See id.* at 1225. Here, Haycraft thoroughly cross-examined W.M. as to his competency; thus, the trial court's failure to hold a competency hearing must be considered harmless error.

. . . .

Q: Can you think of a lie? What would be a lie besides the things I said?

A: (No response).

Q: Can you think of one?

A: (Shakes head negatively).

Q: Okay, but you do know the difference?

A: (Nods head affirmatively).

Q: And you know how important it is to tell the truth today?

A: (Nods head affirmatively).

While Haycraft correctly asserts that it is insufficient for W.M. to indicate that he would be punished for telling a lie, such information is valuable in determining whether a child understood the difference between the truth and a lie. *See id.* As such, this dialog reveals that W.M. understood the difference between the truth and a lie, that he knew that he was compelled to tell the truth, and that he knew what a true statement actually was.

### III. Scarber's Testimony

Haycraft contends that the trial court abused its discretion in permitting Scarber to testify because he was not qualified as an expert witness under Indiana Evidence Rule 702; because the State did not establish that the "grooming" technique was a reliable scientific theory under Indiana Evidence Rule 702; because Scarber testified to a legal conclusion in contravention of Indiana Evidence Rule 704; and because Scarber's profile testimony violated Indiana Evidence Rule 403. Despite Haycraft's numerous objections to relevancy under Indiana Evidence Rule 402, lay witness opinion testimony under Indiana Evidence Rule 701, and the foundational requirements of expert witness testimony under Indiana Evidence Rules 702 and 703, the trial court admitted Scarber to testify as a lay witness under Indiana Evidence Rule 701.

"We review issues concerning the admissibility of evidence for an abuse of discretion." *O'Neal v. State,* 716 N.E.2d 82, 88 (Ind.Ct.App.1999), *trans. denied* (2000). We will only reverse if the error is inconsistent with substantial justice. *Id.* at 89.

### A. Skilled Witness

Haycraft argues that the trial court abused its discretion in allowing Scarber to offer expert testimony as to the "grooming" techniques of child molesters. Scarber testified that in his experience child molesters groom their victims to prepare them for sex by gradually introducing them to sexually explicit materials and sexual contact before actually engaging in sex with them.

Indiana Evidence Rule 702(a) provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Expert scientific testimony is admissible only if "the scientific principles upon which the expert testimony rests are reliable, and the testimony's probative value is not substantially outweighed by the danger of unfair prejudice." *Smith v. State,* 702 N.E.2d 668, 672 (Ind.1998); *see also* Ind. Evidence Rule 702(b) ("Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable."). Haycraft seems to argue that the trial court improperly permitted Scarber to testify because his grooming technique testimony was neither proper expert testimony under Indiana Evidence Rule 702 nor proper lay opinion testimony under Indiana Evidence Rule 701.

▮ Scarber, however, did not testify as an expert, and we have determined that where a witness is not qualified to offer expert testimony under Indiana Evidence Rule 702, the witness may be qualified to testify as a "skilled witness" under Indiana Evidence Rule 701. *See Mariscal v. State,* 687 N.E.2d 378, 380 (Ind.Ct.App.1997), *trans. denied* (1998). A skilled witness is a person with " 'a degree of knowledge short of that sufficient to be declared an expert under Indiana Evidence Rule 702, but somewhat beyond that possessed by the ordinary jurors.' " *Id.* (citation omitted).

▮ Under Indiana Evidence Rule 701, a skilled witness may testify to an opinion or inference that is (a) rationally based on the witness's perception and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. *Hanson v. State,* 704 N.E.2d 152, 155 (Ind.Ct.App.1999). "The requirement that the opinion be 'rationally based' on perception 'means simply that the opinion must be one that a reasonable person normally could form from the perceived facts.' " *Id.* (quoting *Mariscal,* 687 N.E.2d at 380). "The requirement that the opinion be 'helpful' means, in part, that the testimony gives substance to facts which are difficult to articulate." *Id.*

▮ Here, the State developed an extensive foundation to establish Scarber's qualifications to testify about the grooming techniques of child molesters. Scarber stated that he attended training on the methodology of sexual abuse and profile of offenders; that he consulted sexual abuse training manuals; that he had investigated other sexual abuse cases; that he had superior knowledge of the procedures that child molesters employ compared to the average person; and that while he did not consider himself an expert, he did have training beyond the common person regarding the behavior of child molesters. Given this background, we conclude that Scarber was sufficiently qualified to testify as a skilled witness.

▮ Further, Scarber, a detective with the Indiana State Police since 1993, testified that his opinions and inferences were based on his personal experience as an investigator; thus, his testimony was rationally based on his perception. Scarber's testimony also provided details about how other offenders chose their victims and initiated sexual contact with them; thus, his testimony gave substance to facts that were otherwise difficult to articulate. As such, the trial court did not abuse its discretion in admitting Scarber's testimony.[7]

### B. Legal Conclusion

▮ Haycraft asserts that Scarber's testimony regarding grooming techniques is also inadmissible under Indiana Evidence Rule 704(b), which prohibits a witness from testifying "to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Haycraft, however, failed to object to Scarber's testimony on these grounds.[8] "In order to preserve a claim of trial court error in the admission

---

7. We need not address Haycraft's claim that Scarber's grooming theory was not scientifically reliable because that requirement applies only to expert testimony. *See* Evid.R. 702(b).

8. At one point, Haycraft objected as follows: "I object to this witness [Scarber] giving expert, conclusory opinions." Read in context, Haycraft was clearly objecting on expert testimony grounds under Indiana Evidence Rule 702, not on legal conclusion grounds under Indiana Evidence Rule 704.

or exclusion of evidence, it is necessary at trial to state the objection together with the specific ground or grounds therefor at the time the evidence is first offered." *Mullins v. State*, 646 N.E.2d 40, 44 (Ind. 1995). Failure to do so results in waiver of our review of the issue on appeal. *See id.*

### C. Unfair Prejudice

■■■ Haycraft argues that the trial court improperly allowed Scarber's expert profile testimony because the probative value of such testimony was substantially outweighed by the danger of unfair prejudice under Indiana Evidence Rule 403. Without commenting on whether Scarber's testimony was expert profile testimony, we conclude that the error, if any, was harmless.

> An error in the admission of evidence does not justify setting aside a conviction unless the erroneous admission appears inconsistent with substantial justice or affects substantial rights of the parties. Such error is harmless when substantial independent evidence of guilt supports the conviction such that the reviewing court is satisfied that the erroneous admission of evidence played no role in the conviction. However, reversal is mandated when the record reveals that the improperly admitted evidence likely had a prejudicial impact on the average juror such that it contributed to the verdict.

*Udarbe v. State*, 749 N.E.2d 562, 567 (Ind. Ct.App.2001) (citations omitted).

The State presented substantial independent evidence of Haycraft's guilt, including A.M.'s and W.M.'s uncontradicted testimony and Haycraft's own confession. We are satisfied that even if Scarber's testimony was erroneously admitted, it played no role in Haycraft's conviction and did not have a prejudicial impact on the average juror.[9]

### IV. Ineffective Assistance of Counsel

■■ Haycraft argues that he was denied his Sixth Amendment right to effective assistance of counsel based on trial counsel's opening statement in which he referred to Haycraft's confession as follows:

> [Haycraft's] testimony is going to be that it was not true when he gave that statement. You know, I'm not crazy, I know that you—this is going to be, I think, the toughest thing for you to deal with. You're going to have to look [Haycraft] in the eye, you're going to have to listen to him explain this and see whether it holds sanctioning. If it does, then I think he's going to be acquitted. If he doesn't, he's going to be convicted. That's the way it is. I'm not going to spin this out to you and say, oh, it's like this, like that, da da da. That's the real deal. You're going to have to—That's why I think—We talked a little bit in voir dire about the Fifth Amendment. He must, I think, testify and explain this to you. He has said that this wasn't true. Now, I'm sure there are reasons and I'm not going to go into all of those, because frankly I don't think it means much. If I was sitting in your shoes, I'd say, well this guy, he's up there spinning

9. Haycraft asserts that admitting Scarber's testimony was not harmless because his defense was based on the theory "that his confession and A.M.'s testimony were induced by false promises, leniency, and or leading questions." Haycraft claims that "Scarber's opinion testimony decimated [Haycraft's] chances with this defense; for, the testimony clearly enhanced the credibility of A.M. and W.M., and lent more weight to [Haycraft's] own confession." Haycraft, however, does not challenge the legality of the confession on appeal so we need not address this claim.

his case, whatever. I will point out some facts around this statement, number one, he was deceived in the circumstances of that statement. I don't— There won't be any dispute about that. I mean, he had already been charged, there was an arrest warrant issued, the police come in, they don't take him down to the station or tell him, hey, you're under arrest or, you've been charged. They take and—They're trying and purposely creating a situation to deceive him. But, [Haycraft] and the police will tell you more about this situation.

Haycraft subsequently exercised his Fifth Amendment right and decided not to testify in his own defense.[10]

 To prevail on this claim, Haycraft must first show that trial counsel's performance fell below an objective standard of reasonableness. *See Christian v. State.* 712 N.E.2d 4, 5 (Ind.Ct.App.1999). "Evidence of isolated poor strategy, inexperience or bad tactics will not support a claim of ineffective assistance." *Id.* We presume that trial counsel's performance has met an objective standard of reasonableness unless Haycraft rebuts this presumption with strong and convincing evidence. *See id.* Haycraft must also show that the deficiencies in trial counsel's defense resulted in prejudice, which occurs when the conviction or sentence was

caused by a breakdown in the adversarial process that rendered the result of the trial fundamentally unfair or unreliable. *See id.* The two prongs of this test are separate and independent inquiries, allowing us to dispose of a claim based on the failure to establish prejudice alone. *See Williams v. State,* 706 N.E.2d 149, 154 (Ind.1999), *cert. denied,* 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000).

Haycraft argues that the opening statement prejudiced him because his "entire defense rested on the proposition that both A.M. and he were duped by means of leading questions and promises of leniency into falsely claiming that inappropriate sexual contact occurred. .... Although this strategy was employed, [Haycraft's] trial counsel had already informed the jury that his strategy would be worthless unless [Haycraft] testified."[11] While Haycraft has established that in hindsight trial counsel may not have chosen the best strategy, he has not established that he was prejudiced by the opening statement. Given that the State presented A.M.'s and W.M.'s uncontradicted testimony in addition to Haycraft's confession, we are not convinced that the conviction was the result of a breakdown in the adversarial process, which rendered the trial fundamentally unfair or unreliable. Thus, Haycraft's ineffective assistance of counsel claim must fail.

---

10. The record indicates that defense counsel anticipated that Haycraft would testify until he discussed the matter with his client after the State rested its case.

11. Haycraft contends that trial counsel's comment " 'transformed a criminal trial where guilt or innocence turned on whose story the jury believed, into one where the scales were unfairly weighted against Defendant.' " Appellant's Br. at 39 (quoting *Schaefer v. State,* 750 N.E.2d 787, 794 (Ind.Ct.App.2001)). Haycraft relies on *Schaefer,* in which a panel of this court addressed trial counsel's failure to object to the admission of medical records

containing the examining doctor's opinion regarding the nature and cause of the molestation victim's condition when the doctor was not available for cross-examination. The *Schaefer* court concluded that the proceeding was fundamentally unfair because after excluding the inadmissible evidence the State's case essentially amounted to the victim's accusations against the defendant's denials. *Schaefer,* 750 N.E.2d at 793–94. Here, however, the State's evidence included the uncontradicted testimony of A.M. and W.M. and Haycraft's taped confession. As such, *Schaefer* is not applicable here.

## V. Manifestly Unreasonable Sentence

Haycraft argues that his 190–year sentence is manifestly unreasonable under Appellate Rule 7(B) and in contravention of Article I, Sections 16 [12] and 18 of the Indiana Constitution. The trial court sentenced Haycraft to forty-five years for each Class A felony,[13] five years for the Class C felony,[14] two years for each Class D felony,[15] and one year for the Class A misdemeanor,[16] and ordered the sentences to run consecutively for a total of 190 years.

### A. Manifestly Unreasonable

In determining whether a sentence is manifestly unreasonable, the issue is not whether the sentence is unreasonable, but whether in our judgment it is clearly, plainly, and obviously so in light of the nature of the offense and the character of the offender. *See Love v. State*, 741 N.E.2d 789, 793 (Ind.Ct.App.2001). Haycraft contends that for all practical purposes, he received the maximum sentence when the trial court sentenced him to 190 years, and that his sentence is manifestly unreasonable because "the maximum possible sentence should be reserved for the worst of offenders and the worst of offenses."

We disagree with Haycraft's contention that he received the maximum sentence, but we nevertheless conclude that his sentence is manifestly unreasonable. Keeping in mind that crimes against children are contemptible, that Haycraft was in a position of trust when he molested A.M., and that the trial court concluded that he was likely to re-offend, Haycraft is nevertheless "some distance from [having committed] the worst offense or [being] the most culpable offender." *Walker v. State*, 747 N.E.2d 536, 538 (Ind.2001) (concluding that an aggregate sentence of eighty years for two Class A felony child molesting convictions was manifestly unreasonable). While the aggravating circumstances warrant an enhanced sentence, Haycraft's aggregate sentence of 190 years is manifestly unreasonable. *See id.*

Both Article VII, Section 6 of the Indiana Constitution and Ind. Appellate Rule 7(B) authorize us to revise sentences in criminal cases; therefore, we reduce the forty-five year sentence for each Class A felony to thirty-five years, which is more consistent with the trial court's enhancement of Haycraft's other sentences, and

---

**12.** Haycraft fails to present legal analysis in support of a claimed constitutional violation of Article I, Section 16 and thereby waives this argument. *See Spranger v. State*, 650 N.E.2d 1117, 1126 n. 2 (Ind.1995) ("This failure to present legal analysis to support a claimed violation of the Indiana Constitution constitutes waiver of such an argument.").

**13.** IND.CODE § 35–50–2–4 ("A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances....").

**14.** *Id.* § 35–50–2–6(a) ("A person who commits a Class C felony shall be imprisoned for a fixed term of four (4) years, with not more than four (4) years added for aggravating circumstances or not more than two (2) years subtracted for mitigating circumstances.").

**15.** *Id.* § 35–50–2–7(a) ("A person who commits a Class D felony shall be imprisoned for a fixed term of one and one-half (1½) years, with not more than one and one-half (1½) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances.").

**16.** *Id.* § 35–50–3–2 ("A person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more that one (1) year....").

leave the remaining sentences unchanged. Accordingly, we remand with instructions to revise Haycraft's sentence to one hundred and fifty years.

### B. Indiana Constitutional Claim

 While Haycraft also argues that his sentence violates Article I, Section 18 of the Indiana Constitution because "[t]he State presented very little evidence that [Haycraft] is not amenable to treatment[,]" we need not address this issue. "[S]uch particularized, individual applications are not reviewable under Article I, Section 18 because Section 18 applies to the penal code *as a whole* and does not protect fact-specific challenges." *Ratliff v. Cohn*, 693 N.E.2d 530, 542 (Ind.1998). As such, his remaining constitutional challenge is without merit.

Affirmed in part and remanded in part.

KIRSCH, J., concurs as to issues I, II, IV, V and concurs in result as to issue III with separate opinion.

BAILEY, J., concurs as to issues I, II, IV, V and concurs in result as to issue III with separate opinion.

KIRSCH, Judge, concurring in result as to issue III.

I fully concur in the majority opinion as to all issues except for Issue III involving the admission of the skilled witness testimony. Although I believe such admission was error, I also believe on the facts before us that it was harmless beyond a reasonable doubt. I, therefore, concur in result as to this issue.

Since the United States Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the topic of expert opinion testimony has been the subject of intense legal debate, hundreds of scholarly articles in legal journals and countless seminars on the admissibility of expert scientific evidence. *Daubert* assigned a "gatekeeper" role to federal judges who were directed to screen expert scientific testimony to assure not only that the expert was qualified, but that the methodology employed by the expert was "reliable." In Indiana, our supreme court adopted Indiana Evidence Rule 702(a) which antedated the *Daubert* decision but assigned the same role to Indiana trial judges, namely, that they determine that the expert testimony will assist the trier of fact and that the scientific principles and methodology upon which expert testimony is based is reliable.

I believe that there is no question that Officer Scarber's testimony about grooming techniques of child molesters would not be admissible under Ind. Evid. Rule 702. By his own admission, Officer Scarber was not an expert, and nothing in the record before us establishes that the scientific principles or methodology on which his testimony is based are reliable. The question thus becomes whether a proponent of opinion testimony which is clearly inadmissible under Ind. Evid. Rule 702 can have such opinion testimony admitted as lay opinion testimony under Ind. Evid. Rule 701. I believe that the proponents of such evidence should not be permitted to evade the safeguards of *Daubert* and Ind. Evid. Rule 702 and get in through the back door what they cannot get admitted through the front.

To me, it is anomalous to admit opinion testimony by a witness unqualified as an expert without a showing of scientific reliability when one qualified as an expert would not be allowed to give such testimony. I believe the proper construction of Ind. Evid. Rule 701 leads to the same conclusion. The rule provides:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences which are

(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Here, Officer Scarber's opinions were not rationally based upon his perceptions. Rather, they were based upon his lay understanding of social science which has not been shown to be reliable. As a result, I believe the admission of Officer's Scarber's opinion testimony under Ind. Evid. Rule 701 was error.

BAILEY, Judge, concurring in result as to issue III.

I agree with my colleagues that Haycraft's convictions should be affirmed and his sentence revised. However, I write separately to suggest a different analysis regarding the admissibility of opinion testimony given by Officer Scarber.

Judge Brook contends that Officer Scarber's testimony is admissible under Indiana Rule of Evidence 701, as a skilled witness. Judge Kirsch disagrees, arguing in part that "it is anomalous to admit opinion testimony by a witness unqualified as an expert without a showing of scientific reliability when one qualified as an expert would not be allowed to give such testimony." Slip opinion at 18. I agree with Judge Kirsch's conclusion that it was error to admit Officer Scarber's testimony, but for different reasons.

I agree with Judge Kirsch that the trial court decision to admit Officer Scarber's testimony under Indiana Rule of Evidence 701 effectively changed the status of his opinion to that of a qualified expert, without first satisfying the requisite safeguards of Indiana Rule of Evidence 702. But standing alone this statement fails to acknowledge the specialized knowledge continuum upon which Rule 702 and Rule 701 assessments may properly be made. *See* 13B MILLER, *INDIANA EVIDENCE* at 196 (1996) (defining a "skilled witness" as a

person with "a degree of knowledge short of that sufficient to be declared an expert under Rule 702, but somewhat beyond that possessed by the ordinary jurors"). Clearly, the determination of whether a lay witness may be qualified as a skilled witness under Rule 701 remains within the discretion of the trial court, and may on occasion be strictly a question of assessing knowledge based on training, experience, education or the like. However, to ensure that Indiana juries retain control of matters squarely within their province, the parameters of Rule 701 must be strictly adhered to, lest lay opinions become expert opinions in the process causing juries to give undue weight to select testimony. Here, where Officer Scarber's testimony regarding the "priming" factors used by child molesters remains separate and apart from the facts he perceived in Haycraft's home, his testimony fails to meet the criterion of Rule 701 as interpreted by recent caselaw.

Rule 701 states in part that opinion testimony by a lay witness "is limited to those opinions or inferences which are (a)rationally based on the perception of the witness . . ." (Emphasis added.) WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1989) defines perception as follows:

> 1 obs: CONSCIOUSNESS 2 a: a result of perceiving: OBSERVATION b: a mental image: CONCEPT 3 a: awareness of the elements of environment through physical sensation <color> b: physical sensation interpreted in the light of experience 4 a: quick, acute, and intuitive cognition: APPRECIATION b: a capacity for comprehension syn see DISCERNMENT . . .

In accord with the above definition, recent caselaw affirming the use of opinion testimony under Rule 701 has involved testimony that blends the witness's physical observations and specialized knowledge, such

that the inference or opinion is not solely premised upon that witness's training or area of specialty. *See* e.g. *O'Neal v. State*, 716 N.E.2d 82, 89 (Ind.Ct.App.1999) *trans. denied* (holding that an officer familiar with drug transactions was qualified to offer his opinion on the issue of defendant's intent to sell crack cocaine based on his observation that the defendant was carrying sixty-six grams of cocaine and $1128.00 on his person);[17] *Hanson v. State*, 704 N.E.2d 152, 155 (Ind.Ct.App. 1999) (holding that an officer could offer opinion testimony where he was experienced in handling firearms, had consulted a book regarding the at-issue gun, and "most importantly, [had viewed] the P380 handgun found in [defendant's] bedroom."); *Mariscal v. State*, 687 N.E.2d 378, 381 (Ind.Ct.App.1997) (holding that a reserve police officer's opinion that some of defendant's injuries were self-inflicted was admissible because the officer had observed the knife fight); *Wagner v. State*, 474 N.E.2d 476, 494 (Ind.1985) (holding that police officers could only "testify about what they observed and in the use of their senses[,]" but not to the defendant's thought process); *Dudley v. State*, 480 N.E.2d 881, 898 (Ind.1985) (holding that a police officer could opine about bullet paths and powder burns in the defendant's car); *Almodovar v. State*, 464 N.E.2d 906, 910–11 (Ind.1984) (holding that a police officer could testify regarding the caliber of particular weapons he observed).

The aforementioned cases are also consistent with the intent of Article VII of the Indiana Rules of Evidence. Article VII was created against a common law backdrop that "long preferred factual testimo-ny to opinion testimony." 13 MILLER, INDIANA EVIDENCE at 310–11 (2d ed.1995). "The general rule is that witnesses are confined to testifying to specific statements of fact but opinion testimony in certain situations is allowed as an exception to the rule." *Wagner*, 474 N.E.2d at 494. Moreover, this Court has shown even greater reservation for the admissibility of profiling testimony in general, expressing "concern for juries placing excessive weight on character assessments made by experts." *Buzzard v. State*, 669 N.E.2d 996, 1000 (Ind.Ct.App.1996) (holding was within the context of Rule 702). Nevertheless, the trial court permitted Officer Scarber to testify regarding general priming techniques typically used by child molesters and the description of physical objects already easily appreciated by the jury, and in doing so blurred the lines of distinction between Rules 701 and 702, and failed to treat Article VII as containing exceptions to the common law rule.

For the above stated reasons I concur with the majority on issues I., II., IV, and V., but concur in result only with issue III.

---

**17.** I disagree with the *O'Neal* panel's conclusion that the police officer's opinion testimony was admissible to determine intent. *See* Evid. R.704(b) ("Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; ..."). However, had the officer simply opined that the amount of cocaine and cash found on the defendant exceeded that of a typical drug abuser I would have agreed that such testimony was within the confines of Rule 701.