**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHELLE F. KRAUS**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLE

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALEJANDRO PRADO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1110-CR-1094 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48D03-1012-FD-884

**July 12, 2012,**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Alejandro Prado appeals his convictions for Criminal Confinement Resulting in Bodily Injury,[1] a class C felony, Domestic Battery,[2] a class A misdemeanor, Strangulation,[3] a class D felony, Disorderly Conduct,[4] a class B misdemeanor, and Battery Resulting in Bodily Injury to a Pregnant Woman,[5] a class C felony. Prado argues that he is entitled to a reversal because the trial court did not use an interpreter during the majority of the proceedings and the proper procedures were not followed to establish the qualifications of an interpreter when one was used at trial or during the sentencing hearing. Although Prado did not object at trial to the alleged improper procedures regarding the interpreter, he claims that fundamental error occurred.

Prado further argues that the trial court abused its discretion in sentencing him because it failed to identify several mitigating factors that were both significant and supported by the record. Prado also contends that the eight-year aggregate sentence that was imposed was inappropriate in light of the nature of the offenses and his character. Concluding that Prado's sentence was not inappropriate and finding no other reversible error, we affirm the judgment of the trial court.

---

[1] Ind. Code § 35-42-3-3(b)(1)(C).

[2] I.C. § 35-42-2-1.3(a).

[3] I.C. § 35-42-2-9(b).

[4] Ind. Code § 35-45-1-3.

[5] I.C. § 35-42-2-1(a)(8).

FACTS

On December 26, 2010, Prado and his pregnant girlfriend, Amber West, drove to a Wal-Mart and started arguing. They stopped in the store's entranceway and got out of the vehicle.

Luther and Mary Johnson were driving in the same parking lot and observed Prado and West "right in the middle of the road." Tr. p. 276-79, 285-86, 296, 300. West was on the ground, with Prado on top of her, straddling her, with his hands around her neck, and choking her. Prado was shaking West's head back and forth, causing her head to hit the ground. West later recalled that she was scared and had difficulty breathing when Prado was choking her. When Prado saw the Johnsons, he motioned for them to continue driving. At that time, West was able to move away from Prado and free herself. West then stood up, bent over, and vomited. Luther Johnson then called the police.

West, who was crying, attempted to walk away but Prado followed her. When Prado caught up with West, he grabbed her and tried to bring her back to the couple's van. However, West tried to pull away and screamed, "don't touch me," several times. Tr. p. 302, 304.

Three Anderson police officers arrived and saw Prado yelling at West and grabbing her arm. Although the police officers ordered Prado to move away from West, he refused to do so. The officers then physically separated the two and handcuffed Prado. At least one of the police officers noticed red marks on West's neck.

3

Prado was charged with numerous offenses as a result of the incident. Thereafter, on September 13, 2011, the State filed amended charging informations that included the counts named above, and an additional charge of public intoxication.

At Prado's initial hearing, the trial court asked Prado if he spoke English. After Prado responded that he did, the trial court then inquired as to whether Prado understood the charges against him. Prado acknowledged that he did, except for the criminal confinement charge. The trial court had mistakenly read the charging information from an unrelated case, and Prado remarked that "they're lying because . . . she don't drink." Tr. p. 6. At a subsequent hearing, the prosecutor observed that Prado needed an interpreter. The trial court did not inquire as to whether an interpreter was required, but noted an interpreter's presence in open court on two occasions. The record does not reflect that the interpreter was identified, qualified, or sworn. Prado's defense counsel made no objection to the manner in which the interpreter was used.

After several continuances, a jury trial was held on September 13-15, 2011. A reference to the use of an interpreter was made at the beginning of the trial, where preliminary matters were discussed. The trial court commented, at some point, that he "didn't want the interpreter over there anyway." Tr. p. 216. The judge also stated that he "was informed two days ago that the defendant is not always in need to having constant interpretation and now here we are again, doing constant interpretation and we're not utilizing the facility that we've provided. So we'll take a recess until the interpreter

4

accommodates himself back in my office and the defendant is equipped with earphones to hear." Id. at 224.

The jury returned a verdict of guilty as to all offenses except for public intoxication. On October 3, 2011, Alejandro Prado appeared for sentencing. Prior to the hearing, Prado made the following remarks: "I have copies of this list of witnesses. I don't see that on this list of witnesses the two (2) that came to testify against me. They're not on that list. . . . I contacted the Department of Justice and they—they think that everything that was done against me was illegal." Tr. p. 491-92.

Defense counsel remarked that Prado "may understand 85%, 70%, 95% of what is said. I think he clearly understands common conversations." Id. at 507. Prado acknowledges that an interpreter was used to translate the proceedings to him at the sentencing hearing. The record shows that the trial court directed the interpreter to sit next to Prado. The hearing proceeded with the judge asking questions to Prado and Prado responding through the interpreter. Tr. p. 489-90.

At the hearing, the trial court identified Prado's criminal history, specifically his domestic violence history, and the fact that he was on probation at the time of the incident, as aggravating factors. No mitigating factors were found. The trial court then sentenced Prado as follows: Count I, Confinement, a class C felony, to eight years in the Indiana Department of Correction (DOC); Count II, Domestic Battery, a class A misdemeanor, to one year in the DOC; Count III, Strangulation, a class D felony, to three years in the DOC; Count V, Disorderly Conduct, a class B misdemeanor, to 180 days in

the DOC; and Count VI, Battery Resulting in Bodily Injury to a Pregnant Woman, a class C felony, to eight years in the DOC. All counts were ordered to run concurrently for an eight-year executed aggregate sentence. Prado now appeals.

## DISCUSSION AND DECISION

### I. Interpreter

As noted above, Prado claims that he is entitled to a new trial because the trial court did not adequately determine whether Prado required the aid of an interpreter during the proceedings. Prado also asserts that when an interpreter was used at trial and at the sentencing hearing, the trial court failed to identify the interpreter, administer an oath, and did not determine the interpreter's qualifications. For all of these reasons, Prado claims that his due process rights and his right to a fair trial were violated.

We initially observe that Prado did not object at trial to the procedures regarding the use of the interpreter. Thus, the issue is waived. See Malone v. State, 700 N.E.2d 780, 784 (Ind. 1998) (holding that grounds not objected to at trial are waived on appeal). As a result, Prado may seek review only under the fundamental error doctrine. Cutter v. State, 725 N.E.2d 401, 406 (Ind. 2000). Fundamental error is "extremely narrow" and applies only when the error comprises a blatant violation of basic principles, the harm or potential for harm is substantial, and the error results in the denial of fundamental due process. Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). Fundamental error applies only when the error is so prejudicial that it makes a fair trial impossible. Schmidt v. State, 816 N.E.2d 925, 944 (Ind. Ct. App. 2004).

6

In general, when a trial court is placed on notice that a defendant has a significant language difficulty, the court should make a determination as to whether an interpreter is needed to protect the defendant's due process rights. Arrieta v. State, 878 N.E.2d 1238, 1243 (Ind. 2008). A trial court is also put on notice when an interpreter is specifically requested. Id. Absent such an indication, the trial court is under no obligation to inquire into the defendant's need for an interpreter. Id. We also note that an interpreter is subject to the provisions that relate to expert witnesses and an oath or affirmation of a true translation is required. Ind. Evidence Rule 604; Mariscal v. State, 687 N.E.2d 378, 382 (Ind. Ct. App. 1997).

However, when a party fails to object to the procedure used to appoint an interpreter, the party waives the issue. Id. We find this court's opinion in Mariscal particularly instructive in these circumstances. The trial court administered an oath to the interpreter but failed to inquire into the interpreter's qualifications. Mariscal did not object to the procedure that the trial court used to appoint the interpreter, and one of Mariscal's attorneys affirmatively consented to the interpreter. Id.

On appeal, we determined that where a defendant fails to object to the use of an interpreter and also affirmatively consents to the interpreter, "fundamental error" has not occurred, and any subsequent objections to the procedure used to appoint the interpreter are waived. Id. In a more recent case, we have determined that the rationale in Mariscal applies even where counsel does not affirmatively consent to the interpreter. Tesfamariam v. Woldenhaimanot, 956 N.E.2d 118, 123 n.1 (Ind. Ct. App. 2011). Finally,

7

we note that when a party does not object to an expert's qualifications at trial or to a trial court's failure to administer an oath to a witness, those issues are waived on appeal. Griffith v. State, 898 N.E.2d 412, 414–15 (Ind. Ct. App. 2008).

Under these circumstances, and in construing the cases discussed above, we conclude that because Prado did not object when the trial court did not establish the qualifications of the interpreter or did not object because no oath was administered to the interpreter, Prado cannot succeed on his claim of fundamental error. Thus, Prado is not entitled to a new trial on this basis.[6]

Finally, we note that waiver notwithstanding, the trial court <u>did</u> inquire into Prado's ability to speak English at the initial hearing. Prado stated that he spoke English, acknowledged that he could read, responded fluently and appropriately to the trial court's questions, and did not manifest any significant language difficulties. Tr. p. 491. In fact, Prado informed his probation officer that he was "fairly good" at understanding English. Id. at 495, 498. Moreover, the record shows that an interpreter was used during Prado's sentencing hearing. For these additional reasons, Prado has failed to show that he is entitled to a new trial.

---

[6] As an aside, we note that in <u>Tesfamariam</u>, it was determined that the trial court abused its discretion when it did not administer an oath to the interpreter and failed to establish that the interpreter was qualified. Nonetheless, we concluded that the objections were waived because they were not raised at trial. 956 N.E.2d at 123.

## II.  Sentencing

### A.  Failure to Identify Mitigating Factors

Prado asserts that the trial court abused its discretion in sentencing him because it failed to identify significant mitigating factors that were supported by the record. Specifically, Prado argues that the trial court should have identified his alcohol problem, the fact that he was employed, the likelihood that he would benefit from probation, and the fact that he supported his children, as mitigating circumstances.

We engage in a four-step process when evaluating a sentence under the current "advisory" sentencing scheme.  Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218.  First, the trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence."  Id.  Second, the reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion.  Id.  Third, the weight given to those reasons, i.e., to particular aggravators or mitigators, is not subject to appellate review.  Id. Fourth, the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B).  Id.

A trial court abuses its discretion in sentencing a defendant when its decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom.  Richardson v. State, 906 N.E.2d 241, 243 (Ind. Ct. App. 2009).  Due consideration is given to the trial court's decisions.  Akard v. State, 937 N.E.2d 811, 813 (Ind. 2010).

9

The determination of mitigating circumstances is within the trial court's discretion. Rogers v. State, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007). The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. Id. A trial court does not err in failing to find a mitigating factor where that claim is highly disputable in nature, weight, or significance. Id. An allegation that a trial court abused its discretion by failing to identify or find a mitigating factor requires the defendant on appeal to establish that the mitigating evidence is significant and clearly supported by the record. Id.

As for Prado's claim that the trial court erred in not identifying his alcohol abuse as a mitigating circumstance, we note that substance abuse is not necessarily a mitigating factor. James v. State, 643 N.E.2d 321, 323 (Ind. 1994). Here, Prado testified that he likes to drink, and he has not made any claim that he ever sought treatment for his alleged alcohol abuse. As a result, his claim that the trial court erred in not considering his alleged alcohol abuse as a mitigating factor fails. See Bryant v. State, 802 N.E.2d 486, 501 (Ind. Ct. App. 2004) (holding that the trial court did not err in finding substance abuse as an aggravating factor where the defendant was aware of his problem with drugs and alcohol but did not take any positive steps to treat his addiction).

Prado next argues that the trial court failed to identify his employment as a mitigating circumstance. Notwithstanding Prado's self-serving claim that he was employed, we determined in Newsome v. State, 797 N.E.2d 293, 301 (Ind. Ct. App.

10

2003), that the defendant's claim of employment was not necessarily as significant as he had proposed it to be and affirmed the trial court's decision. Id. More particularly, the Newsome court reasoned that many people are gainfully employed, such that a trial court would not be required to consider the fact of employment a significant mitigating factor. Id. Moreover, in Bennett v. State, 787 N.E.2d 938, 948 (Ind. Ct. App. 2003), we observed that the trial court did not abuse its discretion in not identifying the defendant's alleged fulltime employment as a mitigating factor when he did not present specific employment history, performance reviews, or attendance records at the sentencing hearing.

Under these circumstances, we cannot say that Prado's self-serving statement alone that he was employed amounted to a mitigating circumstance. Thus, the trial court did not abuse its discretion on this basis.

We next note that a trial court is not required to identify the fact that incarceration will have negative effects and hardships on a defendant's dependents as a mitigating circumstance. Benefield v. State, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), trans. denied. Indeed, incarceration will always be a hardship on dependents. Vazquez v. State, 839 N.E.2d 1229, 1234 (Ind. Ct. App. 2005). The burden must be "unusual." Benefield, 904 N.E.2d at 247.

Here, it was determined that Prado has four children, by four different mothers, one of whom lives in Florida. Tr. p. 508-09, 535-36. Nothing in the record suggests that the children's mothers are unwilling to support them. Moreover, as the State pointed out,

11

the fact that Prado committed the offense of domestic battery while his fourth child was "still in the womb of the mother is more of an aggravator. It clearly demonstrates a pattern of behavior that's detrimental to the raising of children, the fact that he keeps abusing women. . . ." Id. at 546. Indeed, the trial court agreed, stating that "the fact that he has dependent children for whom he need [sic] to and be responsible and be a proper role model" makes the dependents less of a mitigating fact and more of an aggravating factor. Id. at 548. In short, the trial court did not abuse its discretion in not identifying the alleged hardships that Prado's incarceration would have on his dependents as a mitigating circumstance.

Finally, the record shows that Prado was on probation when he committed the instant offenses. In light of this circumstance, it strains credulity to believe that Prado would respond favorably to probation. Even more compelling, Prado is not entitled to serve his sentence on probation because alternatives to commitment to the Department of Correction are within the sole discretion of the trial court. Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999). For all of these reasons, we conclude that the trial court did not abuse its discretion in determining that an executed sentence—rather than probation—was warranted in this case.

B. Inappropriate Sentence

Prado also contends that his sentence is inappropriate in light of the nature of the offenses and his character pursuant to Indiana Appellate Rule 7(B). While sentencing is within the trial court's sound discretion and should receive considerable deference, the

12

Indiana Constitution authorizes independent appellate review and revision of sentences, which is implemented through Rule 7(B). Carroll v. State, 922 N.E.2d 755, 757 (Ind. Ct. App. 2010), trans. denied.

In reviewing a sentence under Rule 7(B), "[u]ltimately the length of the aggregate sentence and how it is to be served are the issues that matter." Sanchez v. State, 938 N.E.2d 720, 722 (Ind. 2010). We understand and recognize the unique perspective that a trial court brings to its sentencing decisions. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Under this rule, the burden is on the defendant to persuade us that the sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

As for the nature of the offense, the record shows that Prado violently attacked the mother of his unborn child. Tr. p. 278-79, 293, 297-98, 300-01, 309, 360, 363, 286. Prado strangled West in the middle of a street, shook her head back and forth, and caused her to hit the ground. Id. at 278-79, 293, 297-98, 300-01, 309, 386-87. The choking was so severe that it caused West to vomit. Id. at 281-82, 297, 301, 316, 387. Prado's nature of the offense argument avails him of nothing.

As for Prado's character, the record shows that he has accumulated eleven prior criminal convictions, including one felony conviction, and three domestic battery convictions. Tr. p. 538-39. In fact, Prado was on probation for felony domestic battery when he committed the instant offenses. Id. at 539. Prado has shown that he is unable to obey the laws of this State and cannot avoid battering women. Id. at 538-39. As the trial court observed, Prado's attitude toward the judicial process is a "disgrace." Id. at 506-07.

13

Although Prado contends that the sentence was excessive because he did not qualify as the "worst of the worst" for a maximum sentence, appellant's br. p. 20, the test is not to concentrate on comparing facts of hypothetical cases, but to focus on the nature, extent, and depravity of the offense.  Brown v. State, 760 N.E.2d 243, 248 (Ind. Ct. App. 2002) (stating that "[a]lthough one can imagine facts that might be worse than those before us here, such does not lessen the severity of [the defendant's] conduct or bolster the quality of his character by comparison").

Here, Prado was convicted of five different crimes and received a total of eight years.  In our view, an aggregate eight-year sentence for five convictions by a repeat offender is not inappropriate.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.