**Randy HORTON, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 48A04–1001–CR–89.**

Court of Appeals of Indiana.

Nov. 17, 2010.

John T. Wilson, Anderson, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Wade James Hornbacher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Randy Horton appeals, after a jury trial, his convictions of six counts of child molesting as Class A felonies, three counts of child molesting as Class C felonies, and consecutive sentences for an aggregate of 324 years. He raises two issues for our review that we expand and restate as three: whether the trial court erred by allowing a videotaped interview of a child-witness under the recorded recollection exception to the hearsay rule; whether the trial court erred by sentencing him to consecutive maximum sentences for each offense for a total of 324 years in prison; and whether his sentence is inappropriate. Concluding the trial court did not abuse its discretion in admitting evidence or sentencing Horton, and the 324–year sentence is not inappropriate considering the nature of the offenses and Horton's character, we affirm.

### Facts and Procedural History

Horton moved in with R.M.'s mother, who was his girlfriend, R.M., and R.M.'s toddler-aged brother. R.M. referred to Horton as "Dad." Transcript at 293. Beginning on the morning of R.M.'s seventh birthday in August 2008, also her first day of first grade, Horton sexually molested R.M. every morning—"[e]xcept once when [R.M.'s mother] was awake." *Id.* at 304. Each morning, in the privacy of R.M.'s bedroom, Horton woke her and told her to engage in sexual acts with him and to keep their acts secret. The molestation disgusted her, often caused her pain, and she tried to stop. Horton daily exposed his penis to R.M. by not wearing clothing below his waist or by wearing his pants

around his knees. On the first day and on many days thereafter, Horton entered R.M.'s bedroom and told R.M. to "[b]ite, suck, and lick" his nipples, until he ejaculated and wiped his semen on her blanket. *Id.* at 309. Horton also bit, sucked, and licked R.M.'s nipples "really, really often." *Id.* at 343.

"Every morning except when [R.M.'s mother] was awake," Horton directed R.M. to perform oral sex on him—in her own words, to use her mouth to "go up and down" on his penis. *Id.* at 315. He told her "suck my dick," and if she pulled away, he would tell her "get back down there," kick her leg, and grab her hair to pull her head down. *Id.* at 398–99; *see also id.* at 447 (R.M. stating "he usually grabs my hair really hard"); *id.* ("he ... grabs it really, really hard and it yanks me down"). With her mouth on his penis, Horton often chided her to "go faster," and would not allow her to stop until he ejaculated in her mouth. He ejaculated in her mouth "all the time." *Id.* at 318. Horton repeatedly told R.M. to "swallow it"; she said his semen tasted "really, really nasty." *Id.* at 326. Sometimes, despite Horton's orders, R.M. accidentally spit his semen out; Horton then wiped it on her bed and blanket or left it on her bedroom floor. Horton also told R.M. to "rub [his testicles] with [her] hand and lick it." *Id.* at 331.

On numerous occasions Horton inserted his pinky finger into R.M.'s anus and upon removal, wiped fecal matter from his finger onto her blanket and bed. Horton also penetrated R.M.'s anus with his penis "[v]ery often." *Id.* at 337. This caused R.M. severe pain and bowel problems, leading her to testify, "When I have to go poop, ... it feels like I'm going to cry cause it hurts." *Id.* at 338.

"[F]or a few weeks," Horton told R.M. to stand above his face and lower her vagina onto his face while he lay on her bed and licked it. *Id.* at 335. Sometimes he also penetrated her vagina with at least one of his fingers, which R.M. said felt "way worse" than his anally penetrating her with his penis.

On several occasions, Horton also directed R.M. to insert her entire hand and fingers into his anus. While Horton lay on R.M.'s bed, he directed her to make a tight fist and insert it in his anus and to "keep on going up." *Id.* at 439. She inserted her fist up to her wrist, "[u]ntil it touche[d] his poop." *Id.* at 440.

Nearly every day before R.M. departed for school, Horton told R.M. to kiss him, as R.M. described it, "[l]ike a mother and father kiss." *Id.* at 341. He told her to close her eyes, open her mouth, and "wiggle" her tongue with his. *Id.* at 342.

R.M. allegedly told her mother about Horton's molestation,[1] which angered Horton and led him to repeatedly smack her bare bottom with his hands and belt.

In late February 2009, after another morning sexual molestation by Horton, R.M. told a friend that Horton was sexually molesting her. R.M.'s friend then told her own mother, who called authorities. The Madison County Department of Child Services ("DCS") videotaped an interview with R.M., in which she provided a detailed explanation of the type, extent, and duration of sexual molestation by Horton.

A sexual assault nurse examined R.M. several times within a few weeks, noting that R.M.'s body was at merely the first level of sexual maturation. The nurse identified numerous scars in and around R.M.'s vagina and a tear and "significant injury" to her anus, which led to blood in her stool. *Id.* at 662. R.M. soon devel-

---

1. R.M.'s mother was a co-defendant in the same jury trial and acquitted of all charges.

oped a "significant, extensive outbreak of lesions" in and around her genitals. *Id.* at 667. "[R.M.] was crying. It was hard for her to walk" and urinate. *Id.* at 667–68. "[O]n the outside [of R.M.'s] genital areas, there were small blisters with redness around it, with some seepage, whitish clear discharge." *Id.* at 718. Lab reports revealed R.M. contracted herpes simplex virus type I (generally considered oral herpes) and herpes simplex virus type II (generally considered genital herpes). Horton also tested positive for both types of herpes. Recalling what Horton's penis felt like in her mouth, R.M. testified it was "[r]eally bumpy." *Id.* at 325.

Following R.M.'s removal from her household, she has stayed at a friend's family home and in a foster home. She also attends weekly counseling regarding the sexual molestation. One night, while at her friend's family home, R.M. began spitting on the floor because she began to think about Horton's semen. *Id.* at 409.

Horton was charged and convicted by a jury of six Class A felonies: involving R.M.'s mouth and Horton's penis; involving Horton's mouth and R.M.'s vagina; involving Horton's penis and R.M.'s anus; involving R.M.'s finger and Horton's anus; involving R.M.'s fist and Horton's anus; and involving Horton's finger and R.M.'s anus. He was also charged and convicted of three Class C felonies: involving Horton "tongue kissing" R.M.; involving Horton fondling, touching, rubbing, biting, sucking, or licking R.M.'s nipples; and involving R.M. rubbing, biting, sucking, or licking Horton's nipples.

At a break in R.M.'s trial testimony the trial court permitted her to watch her videotaped interview with DCS to refresh her memory. Upon resuming her testimony, she still did not remember numerous details, especially regarding inserting her hand into Horton's anus. Over Horton's objection, the trial court allowed the State to show the videotaped interview to the jury under the recorded recollection exception to the hearsay evidence rule.

The jury convicted Horton as charged. The trial court articulated the following as aggravating circumstances for sentencing: Horton's violation of a trusting relationship; R.M.'s contraction of sexually transmitted diseases; the particularly heinous nature of the offenses; and commission of the offenses within close proximity to R.M.'s toddler-aged brother. The trial court considered Horton's lack of criminal history to be a de minimus mitigating circumstance. The trial court sentenced him to fifty years for each of the six Class A felonies, eight years for each of the three Class C felonies, and ordered all sentences to be consecutive and executed, for a total of 324 years. Horton now appeals.

*Discussion and Decision*

I. Admission of Videotaped Interview

A. Standard of Review

We review a trial court's decision to admit evidence for an abuse of discretion. *Collins v. State,* 826 N.E.2d 671, 677 (Ind. Ct.App.2005), *trans. denied, cert. denied,* 546 U.S. 1108, 126 S.Ct. 1058, 163 L.Ed.2d 885 (2006). We will find an abuse of discretion when its decision is "clearly against the logic and effect of the facts and circumstances before it." *Id.* However, even if we find an abuse of discretion in the admission of particular evidence, we will not reverse unless the defendant's substantial rights have been affected. Ind. Evidence Rule 103(a); *Pruitt v. State,* 834 N.E.2d 90, 117 (Ind.2005), *cert. denied,* 548 U.S. 910, 126 S.Ct. 2936, 165 L.Ed.2d 962 (2006).

B. Recorded Recollection

Horton argues the trial court's admission of the videotaped interview was

reversible error because it does not satisfy the recorded recollection exception to the hearsay rule. Hearsay, defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Evid. R. 801(c), is generally inadmissible, Evid. R. 802. However, our evidence rules provide the following exception for admission of hearsay as a recorded recollection:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Evid. R. 803(5). This exception allows admission of a recorded statement if:

> (a) the memorandum or record relates to a matter about which a witness once had knowledge, (b) the witness has insufficient recollection at trial to enable the witness to testify fully and accurately, (c) the witness is shown to have made or adopted the memorandum or record, (d) the memorandum or record was adopted when the matter was fresh in the witness's memory, and (e) the memorandum or record is shown to reflect the witness's knowledge correctly.

*Impson v. State,* 721 N.E.2d 1275, 1282–83 (Ind.Ct.App.2000). Horton argues the State failed to show the videotaped interview relates to a matter about which R.M. once had knowledge, stating: "The mere making of a statement does not reflect that the declarant did indeed once have knowledge that the facts as stated did occur."

Brief of Appellant at 10. This assertion appears to question whether R.M. had sufficient knowledge of what occurred, in essence, questioning whether the videotaped interview is sufficient evidence for conviction. We must reject this invitation for us to reweigh the evidence, which is a task for the jury. Perhaps more importantly, to the extent Horton argues R.M.'s videotaped statement was untruthful or that R.M. feigned knowledge of the events for the purpose of making the videotaped statement, this argument is irrelevant to the issue of whether admission of the video itself was proper. As to his broader argument that the video does not relate to a matter about which R.M. once had knowledge, we disagree. The video clearly satisfies (a) above because the video is of a DCS employee interviewing R.M. about the molestation, and the trial judge and attorneys discussed what the video might reveal prior to the video's admission.

 As to (b) above, Horton argues R.M. "had a complete and accurate recollection of the events," but "[s]he was unable to remember and testify concerning allegations" that Horton told R.M. to insert her fist into his anus. *Id.* at 10. Upon our review of the transcript, we agree with the trial judge that R.M. had insufficient recollection to testify fully and accurately. In *Smith v. State,* 719 N.E.2d 1289 (Ind.Ct.App.1999), we concluded that "[e]arlier Indiana law required that the witness be shown to have no present knowledge of the pertinent information. Under the new [recorded recollection] rule, a witness need not be shown to be completely without present memory; he need only be shown to have insufficient recollection to ... testify fully and accurately." *Id.* at 1291 (quotations and citations omitted). Throughout R.M.'s testimony she frequently responded to questions by saying she did not

remember. Because her memory prohibited her from testifying fully and accurately about several of the charges against Horton, including regarding the charge Horton highlights, (b) above is satisfied.

To the extent Horton argues the State did not meet a "foundational requirement" of "including some acknowledgment that the statement was accurate when it was made," *Ballard v. State*, 877 N.E.2d 860, 862 (Ind.Ct.App.2007), we point to R.M.'s testimony that she spoke to a DCS employee and told the truth in her videotaped statement. Tr. at 313–14. Further, this case is different from a decision by our supreme court in *Kubsch v. State*, 866 N.E.2d 726 (Ind.2007), *cert. denied*, 553 U.S. 1067, 128 S.Ct. 2501, 171 L.Ed.2d 791 (2008) where the child-witness testified twice she had no recollection of having been interviewed and could not vouch for the accuracy of a recording of her interview. Here, R.M. testified she recalled her discussion with the DCS employee, making the videotaped statement, and telling the truth at that time.

Horton does not dispute the obvious, that R.M. was shown to have made or adopted the video, and therefore (c) above is satisfied. Nor does Horton challenge the obvious fact that R.M. adopted the video when the matter was fresh in her memory, and therefore (d) above is satisfied.

■ Horton does challenge that the video was shown to reflect R.M.'s knowledge correctly. We disagree because where R.M.'s statements in the video covered the same issues as her testimony prior to admission of the video, they were largely consistent with her live testimony. The video filled in many of her live testimony's gaps as to details R.M. did not remember, adding specific details one might expect a child to more vividly remember days after the incidents but perhaps not remember as vividly months later at a trial. Therefore, (e) above is satisfied.

Indeed, in *Impson*, we held admission of a recorded recollection was not erroneous when a victim could not recollect specific details of the incident during her trial testimony, but she timely adopted an affidavit after the incident and the affidavit was deemed to accurately reflect her knowledge because it was consistent with her statements to police and an acquaintance. 721 N.E.2d at 1283 (concluding "the affidavit's consistency with the statements made by [the declarant] to the investigating officers and to [a particular acquaintance] is indicative that it reflects [the declarant]'s knowledge accurately"). Similarly here, R.M. could not recall some specific details of the molestation during her live testimony, but timely adopted the video statement, which was shown to be consistent with her live testimony and her statement to others, including her friend's mother. This case is also similar to *Small v. State*, 736 N.E.2d 742 (Ind.2000), in which our supreme court upheld a trial court's admission of a witness's deposition transcript when the witness could not recall specific information and, even after reviewing the transcript mid-testimony, could not recall specific statements. *Id.* at 745. Similarly here, R.M. could not recall specific details of the molestation and even after she watched the video during a break in her live testimony, still could not remember many specific details.

We therefore conclude the trial court did not err by admitting the videotaped interview under the recorded recollection exception to the hearsay rule, and affirm Horton's convictions.

II. Abuse of Discretion in Sentencing

■ Sentencing decisions "rest within the sound discretion of the trial court and

are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g,* 875 N.E.2d 218 (2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotations and citation omitted). A trial court may abuse its discretion by failing to enter a sentencing statement, entering findings of aggravating and mitigating factors unsupported by the record, omitting factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id.* at 490–91. "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491.

The trial court sentenced Horton to the maximum fifty years for each of the six Class A felonies and the maximum eight years for each of the Class C felonies, all to run consecutively, for a total of 324 years executed. *See* Ind.Code §§ 35–50–2–4 (providing a range of twenty to fifty years imprisonment for each Class A felony conviction) & 35–50–2–6 (providing a range of two to eight years imprisonment for each Class C felony conviction). Horton argues the trial court relied on improper aggravating circumstances, failed to give substantial weight to his lack of criminal history as a mitigating circumstance, and the record's support for the aggravating circumstances is insufficient.

██ As to aggravating and mitigating circumstances, Horton first argues the trial court erred by considering Horton's exposure of R.M. to two types of herpes as an aggravating circumstance. Horton re-lies on *Ridenour v. State,* 639 N.E.2d 288, 297 (Ind.Ct.App.1994), and *White v. State,* 647 N.E.2d 684, 688 (Ind.Ct.App.1995), in which we concluded that the risk of transmission of HIV was not a valid aggravating circumstance because the record in both cases did not reflect the defendant knew he carried HIV, received risk counseling, or tested positive for HIV.

The State refers us to *McCann v. State,* 749 N.E.2d 1116 (Ind.2001), which addressed whether a victim's pregnancy at the time of the attempted rape is a valid aggravating circumstance when the offender did not know she was pregnant. Our supreme court held the defendant's knowledge of the victim's pregnancy was not necessary for it to qualify as an aggravating circumstance. *Id.* at 1120. The supreme court further explained, "aggravating circumstances turn on the consequences to the victim as well as the culpability of the defendant. This understanding of aggravating circumstances comports with the Black's Law Dictionary definition of aggravation: '[a]ny circumstance attending the commission of a crime ... which increases its guilt or enormity or adds to its injurious consequences.'" *Id.* (citation omitted).

The reasoning of *McCann* is supplemented by other cases more recent and more similar to the case before us than *Ridenour* and *White.* In *Brown v. State,* 760 N.E.2d 243, 246 (Ind.Ct.App.2002), *trans. denied,* we held a defendant's infection of a child with gonorrhea without knowledge of his own infection is a valid aggravating circumstance. In *McCoy v. State,* 856 N.E.2d 1259, 1263–64 (Ind.Ct.App.2006), we held infection of a child with a venereal disease without the defendant's knowledge of his own infection is a valid aggravating circumstance. We conclude the *McCann, Brown,* and *McCoy* line of cases govern the case before us, and ac-

cordingly, Horton's infection of R.M. with two types of herpes is a valid aggravating circumstance.

■ Second, Horton contends the trial court erred by considering that he committed the offenses within earshot of R.M.'s toddler-aged brother as an aggravating circumstance. We agree this was improper because it lacks support in the record, however, we need not remand because "[e]ven when a trial court improperly applies an aggravator, a sentence enhancement may be upheld if other valid aggravators exist." *Pickens v. State,* 767 N.E.2d 530, 535 (Ind.2002).

■ Third, Horton contends the trial court improperly considered his maintaining his innocence as an aggravating circumstance, referring us to a statement by the trial court during his sentencing hearing. Upon reading this statement in context, however, we conclude the trial court was referring to both the egregious nature of the offenses and Horton's character, and did not ultimately consider Horton's maintaining his innocence an aggravating circumstance. The trial court's statement in context follows, with our added emphasis of the sentence Horton refers to:

> The Court also finds that the egregious nature of the activities conducted herein by the defendant, with the victim, and I don't want to go into the details of it, but the record speaks very graphically of some of the horrific and unusual physical things that the victim was required to do to assist the defendant in perpetuating this crime on the victim. Those heinous activities continued over a lengthy period of time, which have resulted in consequences, of course we'll never know what psychological, if any, consequences will be inflicted upon the child in this case, but one physical consequence was that she now has congenital [sic] herpes. *How the defendant can smugly sit there, profess his innocence, after the evidence in the case, and after the physical malady which she is going to be inflicted for the rest of her life, I think is another aggravating circumstance in this case.* When people like the defendant in this case take advantage of children of this age, it's almost like, and it seems after thirty-four (34) years of being on the bench that a lot of times the children think this is what life is supposed to be. . . .

Tr. at 841–42. Despite Horton's assertion, we are not persuaded the trial court considered Horton maintaining his innocence an aggravating circumstance. The sentence Horton highlights transitions the trial court's discussion of the egregious nature of the offenses to a discussion of Horton's character, leading to a reference to "people like the defendant." *Id.* Further, the trial court does not refer to Horton maintaining his innocence in the sentencing order, which itself is a more complete and emotionally detached statement of reasons for imposing the particular sentence. *See McElroy v. State,* 865 N.E.2d 584, 589 (Ind.2007) (stating appellate courts examine both written and oral sentencing statements to discern findings of the trial court). Therefore, we conclude the trial court did not base its sentencing decision on Horton maintaining his innocence.

Fourth, Horton concedes that his position as a father figure to R.M. and in a trusting relationship is a valid aggravating circumstance. *See McCoy,* 856 N.E.2d at 1262 ("[A] 'position of trust' by itself constitutes a valid aggravating factor, which supports the maximum enhancement of a sentence for child molesting.") (citation omitted).

■ Horton also argues the trial court failed to give substantial weight to his lack

of criminal history as a mitigating circumstance. We disagree because "[i]t is within a trial court's discretion to determine whether a mitigating circumstance is significant, and what weight should be given that particular mitigating circumstance." *Jones v. State*, 705 N.E.2d 452, 454–55 (Ind.1999); *Anglemyer*, 868 N.E.2d at 491 (reiterating that relative weight assignable to mitigating circumstances is not subject to review for abuse of discretion). The trial court did not abuse its discretion in its evaluation of aggravating and mitigating circumstances.

Horton next argues the record's support for the aggravating circumstances is insufficient. Horton quotes our supreme court as stating the following:

> [The trial court's sentencing statement] must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating.

Brief of Appellant at 14–15 (quoting *Anglemyer*, 868 N.E.2d at 490). Horton omits, however, *Anglemyer*'s continued direction that we need not remand for resentencing if we can "say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. Given the record and our discussion above, we "confidently" conclude the trial court would have imposed the same sentence had it properly considered and explained the record before it, and we need not resentence.

### III. Inappropriate Sentence

 Article 7, sections 4 and 6 of the Indiana Constitution authorizes independent appellate review of the appropriateness of a sentence. *Childress v. State*, 848 N.E.2d 1073, 1079–80 (Ind.2006). This authority is implemented through Indiana Appellate Rule 7(B), which provides this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In making this determination, we may look to any factors appearing in the record. *Roney v. State*, 872 N.E.2d 192, 206 (Ind.Ct.App.2007), *trans. denied*. The defendant bears the burden to persuade this court that his sentence is inappropriate. *Childress*, 848 N.E.2d at 1080.

 Horton argues for our revision of his sentence, which he contends is inappropriate in light of the nature of the offenses and his character. We acknowledge the total sentence is near the upper end among reported Indiana cases and the maximum he could have received for the charges. Yet we find more compelling the deplorable nature of the crimes as shown by our review of the record.

As for the nature of the offenses, the harm R.M. suffered (and has continued to suffer) from her seventh birthday until Horton's molestation ceased is significant and far greater than required to prove Horton's convictions. For over six months, Horton subjected R.M. to physical pain of the most intimate and sensitive nature. While R.M.'s body was in only the first stage of sexual maturation, Horton daily sexually violated R.M.'s mouth, breasts, hands, vagina, and anus, and violently kicked her and pulled her hair. Her severe bodily pain and discomfort throughout the incidents is well-documented in the record. For example, she suffered pain in and around her vagina and anus, which led to internal problems with her bowels, and

she contracted oral herpes and genital herpes.

In addition to physical harm, R.M. suffered psychological and emotional harm. The record reveals R.M. was grossly disgusted by her and Horton's actions and now requires weekly counseling regarding her ordeal. At least once, R.M.'s vivid memory of Horton's semen caused her to spit up, even when finally in the safety of her friend's family's home.

Further, R.M.'s tender age of seven makes these offenses even more appalling and approximates another aggravating circumstance. In *Brown v. State*, 760 N.E.2d 243, 246 (Ind.Ct.App.2002), *trans. denied*, we held that "a court may consider extreme youth as an aggravating factor even where the age of the victim is an element of the offense," and that consideration of the age of a seven-year-old victim of a crime requiring a victim under fourteen years old is a valid aggravating circumstance. *Cf. McCarthy v. State*, 749 N.E.2d 528, 539 (Ind.2001) (declining age as an aggravating circumstance where the victims of child molestation were fifteen years old and the offender convicted and sentenced for an offense requiring victims below sixteen years old). Further, in *Stewart v. State*, 531 N.E.2d 1146 (Ind.1988), our supreme court affirmed a trial court's use of an age proxy as an aggravating circumstance, specifically, "that the victim was not only a minor, but one of tender age, he was handicapped, and [defendant]'s acts caused the [victims] serious emotional harm." *Id.* at 1150. Similarly here, R.M. was not only less than fourteen years old—as the offense requires—but merely seven years old; her body was physically at the first level of sexual maturation; and she suffered serious physical, emotional, and psychological harm. As in *Stewart*, the particularized circumstances of this case resulting from R.M.'s physical sexual im-

maturity and tender age add to the egregiousness of the offenses.

We next turn to Horton's argument that his character—including relative lack of criminal history, temporary employment, and enrollment in a technical school—does not warrant a 324–year sentence. We disagree. These traits do not negate all questions as to character. *See Sanchez v. State*, 891 N.E.2d 174, 176–77 (Ind.Ct.App. 2008) (affirming sentence as appropriate because of a defendant's "daily disregard for the laws of this country" as an illegal alien despite gainful employment and lack of criminal history). Similar to *Sanchez*, Horton's daily disregard for the law throughout this period of molestation also speaks to his character. We also point to our supreme court's guidance in *Laux v. State*, 821 N.E.2d 816 (Ind.2005). In *Laux*, the supreme court affirmed a sentence despite agreeing that the defendant's "lack of criminal history, work ethic, educational achievement, and remorse have value." *Id.* at 823. By doing so, the supreme court dismissed his argument that the "crime [wa]s an aberration on an otherwise responsible, caring, peaceful, hardworking, and honest life." *Id.* (quotation omitted). Most importantly, the *Laux* court did so "in light of all the circumstances surrounding [the] crime." *Id.* We do the same here, concluding, in light of all the circumstances surrounding Horton's offenses, his lack of criminal history, temporary employment, and enrollment in a technical school do not speak of his character such that his sentence is inappropriate.

Finally, Horton argues he warrants a lesser sentence by comparing his case to other reported cases. We disagree, but entertain his call to contrast his case with others. In *Serino v. State*, 798 N.E.2d 852 (Ind.2003), the supreme court revised the defendant's 385–year sentence to ninety years with a thorough discussion of

Indiana's approach to sentencing. Our supreme court revised the sentence, in large part, because of substantial uncontested testimony as to the defendant's positive character traits—"very honest and upstanding, hardworking and a very loving, encouraging, and good father." *Id.* at 858 (quotations omitted). He was a spiritual mentor, including to other inmates, and he received numerous letters of support. The complaining witness and his mother also commented positively on his character and the child-victim's mother was not opposed to—in fact, appeared to advocate for—minimal imprisonment. In stark contrast, Horton has received no such support from friends, family, community, or the victim or victim's family.

Our supreme court also noted that Serino's sentence was outside the typical range of sentences imposed for child molesting of one victim and an offender's lack of criminal history, and cited several cases that revised sentences. *Serino* first cited *Kien v. State,* 782 N.E.2d 398 (Ind.Ct.App.2003), *trans. denied,* in which we revised consecutive forty-year sentences to be served concurrently. We did so because "the evidence did not necessarily establish that the acts occurred at significantly different times with [the defendant] having time to reflect upon the heinous nature of the crimes committed." *Id.* at 416. This contrasts with the case before us, in which evidence clearly established Horton's daily sexual molestation of R.M. over a period of at least six months.

*Serino* also cited *Haycraft v. State,* 760 N.E.2d 203 (Ind.Ct.App.2001), *trans. denied,* in which we revised a defendant's 190–year sentence to 150 years. The trial court sentenced him for four Class A felonies, two Class C felonies, two Class D felonies, and one Class A misdemeanor, and ordered him to serve them all consecutively. Although his offenses were con-

temptible, we revised upon concluding he was "nevertheless some distance from having committed the worst offense or being the most culpable offender." *Id.* at 214. Our only revision was to make the enhancement of his Class A felony convictions "more consistent with the trial court's enhancement of [his] other sentences, and le[ft] the remaining sentences unchanged." *Id.* at 214–15. As for Horton, the trial court enhanced all of his sentences equally—enhancing them all to the maximum. In addition, although we are reluctant to compare harms, the quantity of Horton's six Class A felonies and three Class C felonies merit a comparatively greater sentence than Haycraft. R.M. was several years younger than either of Haycraft's two victims, Horton's daily molestations occurred far more often and over a far longer period of time, and Horton's offenses are of a more brute sexual nature than the sexual deviance of Haycraft. Qualitatively, too, Horton's offenses warrant a comparatively greater sentence.

*Serino* also cited *Walker v. State,* 747 N.E.2d 536 (Ind.2001), in which our supreme court revised the consecutive sentences for two counts of child molestation to run concurrently. It did so because the defendant lacked criminal history, "the two separate counts of child molestation were identical and involved the same child," and the child was not physically injured. *Id.* at 538. Again, this contrasts with Horton's case. Here, his daily sexual molestation of R.M. varied greatly, including "tongue kissing," his orally stimulating her nipples, her orally stimulating his nipples, his penile and digital penetration of her anus, her penetration of his anus, and his oral stimulation of her vagina. R.M. also suffered great pain, substantial physical injury, and contracted two types of herpes.

Horton's case is far more similar to a case *Serino* cited in which a sentence for child molestation was affirmed. In *Cruz Angeles v. State*, 751 N.E.2d 790 (Ind.Ct. App.2001), *trans. denied,* we affirmed the trial court's sentence because the offenses were repeatedly committed against the defendant's own daughters, and considering "the ongoing nature and frequency of his crimes and the position of trust he occupied," we did not deem revision necessary. *Id.* at 800. Horton shares these aggravating factors and others as well.

As our discussion above thoroughly details, our review of the record, which includes intimate details of Horton's sexual molestation and R.M.'s significant harm, and our review of other Indiana cases, leads us to conclude the sentence for each of the nine felony convictions and the trial court's decision for Horton to serve them consecutively, is not inappropriate in light of the offenses and his character. Accordingly, we find no error in Horton's sentence.

### Conclusion

The trial court did not abuse its discretion by admitting R.M.'s videotaped interview, or by imposing a 324–year sentence for nine counts of child molestation. We therefore affirm Horton's convictions and sentence.

Affirmed.

MAY, J., and VAIDIK, J., concur.