

# IN THE
# Court of Appeals of Indiana

Josh Griffith,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Apr 30 2025, 10:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

April 30, 2025

Court of Appeals Case No.
23A-CR-2022

Appeal from the Marion Superior Court

The Honorable Andrew Borland, Magistrate

Trial Court Cause No.
49D32-2107-F1-23262

---

**Opinion by Judge May**
Judges Brown and Pyle concur.

**May, Judge.**

[1] Josh Griffith appeals following his conviction of Level 1 felony child molesting.[1] Griffith raises five issues on appeal, and we need address only three[2]:

> 1. Whether the trial court committed reversible error when it allowed the State to impeach Griffith by questioning him about a report of child abuse that the Indiana Department of Child Services ("DCS") had investigated and determined was unsubstantiated;
>
> 2. Whether the State presented sufficient evidence such that retrial does not violate Griffith's constitutional right to not be subjected to double jeopardy; and
>
> 3. Whether the trial court abused its discretion by allowing the State to read a transcript of the alleged victim's forensic interview into evidence.

We reverse and remand.

---

[1] Ind. Code § 35-42-4-3 (2015).

[2] We do not address Griffith's arguments that the trial court abused its discretion when it limited his presentation of evidence designed to counter the State's impeachment of his testimony and when it limited his impeachment of the alleged victim because we reverse Griffith's conviction on other grounds. *See*, *e.g.*, *Methodist Hosps., Inc. v. Johnson*, 856 N.E.2d 718, 720 n.6 (Ind. Ct. App. 2006) (declining to address issue when we reversed on other grounds).

## Facts and Procedural History

[2] Griffith and Emily married in 2016, and they bought a house together in Beech Grove, Indiana. Griffith and Emily each had three children from prior relationships that they brought into the marriage. Griffith's three children were Lu.G., Le.G., and C.G., and Emily's three children were C.L., B.L., and M.L. Griffith and Emily had a seventh child together, G.G., in 2017.

[3] Christina Smith ("Christina") was one of Emily's friends, and they had known one another since middle school. Christina and her husband Trevor Smith ("Trevor") welcomed a daughter, O.S., in September 2016. In early 2019, Emily and Griffith began babysitting O.S. approximately three days a week when both Christina and Trevor had to work. This arrangement lasted until O.S. was old enough to begin preschool in the summer of 2020. On June 15, 2021, during a conversation about arranging a playdate between O.S. and G.G., O.S. told Christina that Griffith had sexually abused her. Christina and Trevor contacted the police the next morning.

[4] Maya James, a forensic child interviewer at the Marion County Child Advocacy Center, interviewed O.S. on June 22, 2021. While James was explaining her role and the purpose of the interview room, O.S. interrupted her to say: "I just have one thing that someone did . . . It's a good, a good guy did it, but it was, it was inappropriate." (Tr. Vol. 2 at 161.) Later in the interview, when James asked O.S. to describe what was inappropriate, O.S. stated:

> A good guy did it, but it wasn't appropriate still. (Inaudible) asked me to put my mouth on his private part. . . . It was a good guy that made me put my mouth on his propriate [sic]. I accidently forgot to say I didn't want to do it.

(*Id*. at 162) (parenthetical in original). O.S. explained the "good guy" was an adult named Josh, and he was the father of her friend G.G. (*Id*.) James asked O.S. to circle, on a diagram of a male body, the body part she was referring to when she said "Josh's private", and O.S. circled the penis. (*Id*. at 165.) O.S. stated this occurred at "a house that I go to that's like my school." (*Id*. at 163.) She explained Josh asked her to place her mouth on his penis "a lot . . . because I been there a lot." (*Id*. at 165.) O.S. described that the last time Griffith made her put her mouth on his penis was after G.G. had taken a toy from O.S. and O.S. had gone to Griffith to complain. O.S. stated it occurred when Griffith was in the house's bathroom and O.S. was "half away [sic] in the bathroom and half way in the inside of the house." (*Id*. at 170.) She explained: "The whole thing went in. I had his private part in my, with my mouth on it." (*Id*. at 168.)

[5] The State charged Griffith with one count of Level 1 felony child molesting on July 29, 2021, and the trial court held Griffith's jury trial beginning on February 15, 2023. O.S. was six years old at the time of the trial. She testified that she remembered a man named Josh Griffith as the father of her friend G.G. The State questioned O.S.:

> Q. And do you remember going over to Josh's house?
>
> A. Yes.

Q. Why would you go to Josh's house?

A. Because my mom dropped me off there.

Q. [O.S.], do you remember a time that Josh did something to your body that made you feel uncomfortable?

A. Yes.

Q. Okay. Can you tell me about that?

A. I forget.

Q. Okay. [O.S.], do you see Josh in the courtroom today?

A. No.

(*Id*. at 101.) The State asked O.S. to stand up in the witness stand and look around the courtroom. O.S. continued to indicate that she did not see Griffith in the courtroom. The State also asked O.S. to come off the witness stand into the well of the courtroom and look for Griffith, and she continued to indicate she did not see him in the courtroom. The State presented O.S. with a disc that contained a recording of her forensic interview. O.S. acknowledged that she had watched the recorded interview and that it was her in the recording.

[6] Griffith objected to further questions about the recorded interview on the basis that the interview was hearsay and did not meet the recorded recollection exception to the rule against hearsay. The trial court ruled that the State could

not play the recording for the jury but, assuming the State laid an adequate foundation, the transcript of the interview could be read to the jury. The State asked O.S.:

> Q. [O.S.], did you tell the truth in that video?
>
> A. Yes.
>
> Q. And did you do that interview when you remembered the events better?
>
> A. Yes.

(*Id*. at 133.) After O.S. finished testifying, the State called Forensic Interviewer James to testify. She explained that she had also reviewed the recording of the forensic interview, and it was a true and accurate recording of her forensic interview with O.S. The parties stipulated that the transcript of the interview was accurate, and the State read the transcript to the jury over Griffith's objection.

[7] After the State rested its case, the trial court held a hearing outside the presence of the jury. During that hearing, the State discussed its intentions regarding a prior allegation of child molesting that had been made against Griffith:

> [STATE:] I just want to make a record so that we all know where we're going here, if it happens, okay? I just want to be very clear. A lot of the witnesses, specifically talking about the defendant's wife Emily, in her depo was very insistent that the defendant would never do this. And so, my concern, and I wanted to make

sure everyone is aware that if that's where we go here, or if that's where the defendant goes, or other witnesses, the defendant has been accused of this before, and so the State would ask to approach and would be asking Your Honor to allow us to introduce that evidence, if that becomes the case.

[GRIFFITH:] Judge, first of all, I'm not going to be asking Mrs. Griffith that and –

THE COURT: Then we're good.

[GRIFFITH:] Yeah.

THE COURT: All right. I don't need to hear anything more, then. That's fine.

(Tr. Vol. 3 at 41.)

[8]     Griffith testified at trial, and his attorney questioned him during his direct examination:

Q. Okay. Let's see. Joshua Griffith, did you put your penis in the mouth of [O.S.] at any time?

A. No, I never did.

Q. Look at those people and tell them.

A. I have never done that to [O.S.] or any other child that I've ever known.

* * * * *

Q. And you must understand as parents that are on the jury how they feel about this kind of an accusation.

A. I do.

Q. So, you better look at them and tell them whether or not, again, you would put your penis in the tiny mouth of a little girl who is two years old, or one and a half. Look at them and tell them.

A. I would not. I would not hurt a child.

(*Id*. at 135-36.) Later during Griffith's direct examination, his attorney returned to the topic:

Q. And ever – have you ever wanted to do that to a child?

A. No, I have not.

Q. And look at this jury and tell them that.

A. I've never wanted to touch or hurt a child in any way, particularly in a sexual manner.

(*Id*. at 145.)

[9]     Prior to cross-examining Griffith, the State notified the trial court of its intention to impeach Griffith by questioning him about an allegation that he had forced M.L. to perform oral sex on him. Griffith objected to the State's request. He noted the allegation was reported to the DCS by Emily's ex-

husband based on something Emily's ex-husband's son had reported M.L. had said, M.L. denied the abuse when interviewed by DCS, and DCS concluded the abuse allegation was unsubstantiated. Griffith argued his assertion that he would never sexually abuse a child "does not open the door to an accusation that was unsubstantiated." (*Id*. at 149.) He characterized the State's request as "fatally prejudicial." (*Id*. at 156.) The trial court overruled Griffith's objection. The trial court explained:

> As we spoke in the pretrial discussions before we began this, this was going to be a potential issue. And yet repeatedly throughout the direct examination, "I would never hurt a child," "I would never sexually touch a child," repeatedly was said over and over again. That opens the door to impeachment on a collateral matter. And that's where we're going with this.

(*Id*. at 161.)

[10] On cross-examination, the State asked Griffith: "You in fact have been previously accused of having [M.L.], your stepdaughter, perform oral sex on you; is that correct?" (*Id*. at 165-66.) Griffith answered: "Yes. I was informed of that recently." (*Id*. at 166.) On redirect, Griffith's attorney questioned him regarding the allegation involving M.L. Griffith explained he did not know about the allegation until his attorneys informed him of it and neither DCS nor the police ever interviewed him about the allegation. Griffith testified he had learned from his attorneys the report had been made by Emily's ex-husband based on something his son had said, and M.L. denied the allegation when

interviewed by DCS. Griffith stated DCS found the report to be unsubstantiated.

[11] When the trial court asked the jurors if they had any questions for Griffith, the jurors submitted several questions regarding the allegation involving M.L. Juror #10 asked:

> Question #1 in reference to the accusation of [M.L.] being asked to perform oral sex on Josh—when was this reported?
>
> Question #2 how old was [M.L.] at that time of the reporting?

(App. Vol. 2 at 131.) Juror #4 asked:

> Question #1 Who is [M.L.] to you?
>
> Question #2 Have you been restricted from spending alone time with her?
>
> Question #3 Has that been put on pause because of this charge?

(*Id*. at 132.) Juror # 5 asked:

> Question #1 How old was the accuser who reported the incident with [M.L.]?

(*Id*. at 133.) The trial court chose not to ask Griffith any of those questions. The trial court explained: "We've gone about as far as I want to go. That is a collateral issue. You had an opportunity to rehabilitate your client. We're not having a double trial here." (Tr. Vol. 3 at 171.) Following Griffith's testimony,

Griffith attempted to recall Emily because the jurors had "asked if he had been cut off from contact with [M.L.], and he has not been. Emily Griffith knows that." (*Id.* at 174.) The trial court ruled it would not allow such testimony. It explained: "We're done. We're done with that issue. Does she have anything besides that issue? We're not having a trial within a trial. We're not. That's what you're trying to do." (*Id.*) Griffith then rested his case. After deliberation, the jury returned a verdict finding Griffith guilty.

On June 29, 2023, the trial court sentenced Griffith to a term of twenty years in the Indiana Department of Correction. On July 14, 2023, Griffith filed a motion to correct error asking the trial court to vacate his conviction and order a new trial. He asserted the trial court's decision to allow the State to question him about the prior allegation regarding M.L. constituted reversible error because it "was irrelevant, unfairly prejudicial, and double hearsay." (App. Vol. 3 at 5.) The trial court did not rule on the motion to correct error, and it was deemed denied on August 28, 2023.

## Discussion and Decision

### 1. State's Impeachment of Griffith

Griffith contends the trial court committed reversible error when it allowed the State to ask him about the unsubstantiated allegation that he forced M.L. to perform oral sex on him. We review a trial court's evidentiary rulings for abuse of discretion. *Smith v. State*, 190 N.E.3d 462, 465 (Ind. Ct. App. 2022), *reh'g denied*, *trans. denied*. "An abuse of discretion occurs if the trial court

misinterpreted the law or if its decision was clearly against the logic and effect of the facts and circumstances before it." *Id*.

[14] Griffith asserts that "[w]ithout any evidence that Griffith actually molested his stepdaughter [M.L.], the accusation he did so [was] irrelevant, highly inflammatory, unfairly prejudicial and inadmissible[.]" (Appellant's Br. at 19-20.) He contends the questioning was barred by Rules of Evidence 401, 403, and 404(b). Indiana Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Rule of Evidence 403 allows the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Rule 404(b) states: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*.

[15] "Indiana Evidence Rule 404(b) serves to safeguard the presumption of innocence in favor of criminal defendants. . . . This restriction prevents the jury from indulging in the 'forbidden inference' that a criminal defendant's 'prior wrongful conduct suggests present guilt.'" *Fairbanks v. State*, 119 N.E.3d 564,

568 (Ind. 2019) (quoting *Byers v. State*, 709 N.E.2d 1024, 1026-27 (Ind. 1999)), *cert. denied*, 140 S. Ct. 198 (2019). Before admitting evidence under Rule 404(b), the trial court must first: "(1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403." *Mise v. State*, 142 N.E.3d 1079, 1086 (Ind. Ct. App. 2020), *trans. denied*.

[16] With respect to the accusation's relevance, we agree with Griffith that "[t]he fact that someone somewhere at some time accused Griffith of forcing [M.L.] to perform oral sex is not evidence that he did, in fact, do so." (Appellant's Br. at 20.) The State may not "'parade past the jury a litany of potentially prejudicial [prior bad acts] that have been established or connected to the defendant only by unsubstantiated innuendo.'" *Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997) (quoting *Huddleston v. U.S.*, 108 S. Ct. 1496, 1501 (1988)) (brackets in *Hicks*).

[17] Griffith relies on *Perry v. State*, 956 N.E.2d 41 (Ind. Ct. App. 2011), *reh'g denied*, to support his argument. In *Perry*, we reversed Perry's conviction because the trial court erred when it allowed the State to elicit during its cross-examination of Perry that he had been arrested or charged on five prior occasions following domestic disturbances involving the alleged victim. *Id.* at 60. We explained:

> [B]efore a defendant's alleged prior misconduct evidence can be admitted for a permissible purpose under Rule 404(b), there must be sufficient proof from which a jury could find that the defendant committed the prior acts in question. *D.R.C. v. State*, 908 N.E.2d 215, 223-24 (Ind. 2009), *reh'g denied*. Otherwise

stated, "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988). This assessment is governed by Evidence Rule 104(b), which provides, "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the Court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." *D.R.C.*, 908 N.E.2d at 223-24.

*Id*. at 59. We held "that, where evidence of prior misconduct consists only of an arrest or charge, the fact of the arrest or charge alone will not suffice to sustain admission under Rules 404(b) and 104(b)." *Id*. at 60.

[18] Here, Griffith was never arrested or charged with molesting M.L. The accusation that Griffith forced M.L. to perform oral sex on him was reported to DCS by Emily's ex-husband based on something M.L.'s half-brother said he heard M.L. say. When DCS interviewed M.L., she denied that Griffith had abused her, and DCS concluded the report was unsubstantiated. Like the dismissed charges in *Perry*, there was not sufficient proof from which a jury could find Griffith had committed an act involving M.L. Moreover, evidence of child molestation is "highly inflammatory," and a trial court must carefully consider whether the probative value of such evidence outweighs its prejudicial effect. *D.R.C. v. State*, 812 N.E.2d 1127, 1140 (Ind. Ct. App. 2004), *trans. denied*. The danger of the jury drawing the forbidden inference in this case was also high given the similarity in the allegations involving M.L. and O.S. Thus, the evidence was not admissible pursuant to Rule 404(b), Rule 401, and Rule 403. *See*, *e.g.*, *Craun v. State*, 762 N.E.2d 230, 238 (Ind. Ct. App. 2002) (holding

trial court erred by admitting evidence of alleged other crimes when the evidence was not relevant for any purpose other than to show defendant's propensity to commit crime), *trans. denied*.

[19] The State contends Griffith "opened the door to the admission of this evidence through his testimony, in which he repeatedly asserted that he had never harmed any child and never had any desire to engage in sexual conduct with any child." (Appellee's Br. at 12.) "Otherwise inadmissible evidence may be admitted where the defendant opens the door to questioning on that evidence. The door may be opened when the trier of fact has been left with a false or misleading impression of the facts." *Clark v. State*, 915 N.E.2d 126, 130 (Ind. 2009) (internal citation omitted), *reh'g denied*. "When that happens, the State may introduce otherwise inadmissible evidence if it is a fair response to evidence elicited by the defendant." *Wilder v. State*, 91 N.E.3d 1016, 1023 (Ind. Ct. App. 2018) (internal quotation marks omitted). This includes evidence otherwise constitutionally prohibited or barred by the Rules of Evidence. *See, e.g.*, *Cameron v. State*, 22 N.E.3d 588, 592-93 (Ind. Ct. App. 2014) (holding defendant opened the door to questions implicating his right against self-incrimination); *F.W.C. v. State*, 821 N.E.2d 907, 911-12 (Ind. Ct. App. 2005) (holding defendant opened the door to questions about a prior incident in which he pushed the victim out of a moving car after he omitted the incident when describing prior domestic disputes).

[20] Griffith testified he never inserted his penis into the mouth of O.S. "or any other child that I've ever known." (Tr. Vol. 3 at 135.) Griffith reiterated that assertion several times during his testimony.[3] For example:

> [Griffith's Attorney:] So, you better look at them and tell them whether or not, again, you would put your penis in the tiny mouth of a little girl who is two years old, or one and a half. Look at them and tell them.
>
> [Griffith:] I would not. I would not hurt a child.

(*Id*. at 136.) Griffith also testified: "I've never wanted to touch or hurt a child in any way, particularly in a sexual manner." (*Id*. at 145.)

[21] The State argues Griffith's comments denying ever sexually abusing any child or desiring to abuse any child "left the jury with the impression . . . that his past was completely clean when it came to sexual activity with children, with nothing in it to suggest otherwise." (Appellee's Br. at 20.) The State asserts this was "a false and misleading impression because in 2019, when she was five years old, Defendant's stepdaughter told her stepbrother that Defendant had made her perform oral sex on him." (*Id*.) However, an accusation that a person did something is not proof the person did it. As Griffith notes, he "never said anything about his reputation, record, past or whether anyone had

---

[3] If the State believed Griffith's repeated assertions were unfair, the State could have objected, but the State did not do so. *See* Ind. Evid. R. 403 (providing that relevant evidence may be excluded if it is needlessly cumulative).

accused him. He simply denied ever sexually harming or wanting to sexually harm a child." (Appellant's Reply Br. at 9 n.1.) Moreover, an allegation premised on double hearsay and later determined to be unsubstantiated by DCS is a far cry from a conviction, which requires an actual adjudication encompassing due process and the testing of allegations to determine if they are true. *See Perry*, 956 N.E.2d at 59 (noting that neither an arrest nor the filing of charges "'has been traditionally viewed as sufficiently probative of the basic question of whether the underlying act occurred'") (quoting *U.S. v. Robinson*, 978 F.2d 1554, 1559-60 (10th Cir. 1992)). We cannot say that Griffith's denials opened the door to the State questioning him about an unsubstantiated allegation involving M.L., and therefore, we hold the trial court erred by allowing the State to use the allegation to impeach Griffith.[4] *See, e.g.*, *Newman v. State*, 719 N.E.2d 832, 836 (Ind. Ct. App. 1999) (holding witness's testimony that he did not know he was traveling in a stolen car did not open the door for the State to introduce evidence of the witness's prior juvenile adjudications), *trans. denied*.

---

[4] Rule 405 allows testimony about a person's character or character trait in the form of an opinion or in testimony about the person's reputation, and the Rule provides that "[o]n cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct." However, as Griffith notes, that he "had been accused of molesting [M.L.] does not explain, contradict, or disprove Griffith's testimony that he would never sexually hurt a child or make a child perform oral sex. A person can be accused of doing something without having done it." (Appellant's Br. at 23.) Consequently, the State's questioning was also not permissible rebuttal evidence pursuant to Rule 405. *See, e.g.*, *Johnson v. State*, 671 N.E.2d 1203, 1207 (Ind. Ct. App. 1996) (holding State could not present evidence of specific instances of defendant's aggressive behavior when the defendant did not introduce evidence of his character for peacefulness), *trans. denied*.

Having determined the trial court erred in allowing the State to question Griffith about the allegation involving M.L., we next look at whether the error was harmless. For non-constitutional errors, Indiana Appellate Rule 66(A) outlines the standard we use to determine whether an error is harmless. *Hayko v. State*, 211 N.E.3d 483, 491 (Ind. 2023), *reh'g denied*, *cert. denied*, 144 S. Ct. 570 (2024). It provides:

> No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

App. R. 66(A). "Under this test, the party seeking relief bears the burden of demonstrating how, in light of all the evidence in the case, the error's probable impact undermines confidence in the outcome of the proceeding below." *Hayko*, 211 N.E.3d at 492. This entails "a review of what was presented to the trier of fact compared to what should have been presented." *Id*. When performing this review, we look at "the likely impact of the improperly admitted or excluded evidence on a reasonable, average jury in light of all the evidence in the case." *Id*.

Griffith contends the erroneously admitted evidence likely had a prejudicial impact on the jury. He asserts "the accusation was extremely inflammatory" and "created the unfair risk that the jury would convict Griffith because he had twice been accused of the same thing." (Appellant's Br. at 28.) We agree. The jurors asked several questions related to the accusation involving M.L., and the

State twice referenced the allegation during closing argument. (*See* Tr. Vol. 3 at 181 ("Pay attention to the question that the State asked him, were you previously accused of making [M.L.] perform oral sex on you") & 193 ("I am asking you to convict that man because I have proven my case beyond a reasonable doubt . . . I'm not asking you to look at the fact that he's been previously accused of this before by someone else living in that house").) Thus, the introduction of the allegation was likely to have had an improper prejudicial effect on the jury. *See Giles v. State*, 699 N.E.2d 294, 299 (Ind. Ct. App. 1999) (erroneous admission of stale conviction was not harmless when State referenced conviction during closing argument and invited "the jury to base their decision, at least in part, not on the evidence presented at trial, but on Giles' past behavior"). In addition, the evidence against Griffith was far from overwhelming. Griffith denied abusing O.S. O.S. could not identify Griffith at trial, and she testified at trial that she did not remember being abused by him. The State's strongest evidence against Griffith was the forensic interview O.S. gave when she was four years old, and that interview occurred approximately one year after she was allegedly abused by Griffith. Thus, we cannot say the trial court's erroneous admission of evidence related to the allegation involving M.L. was harmless, and we reverse Griffith's conviction. *See, e.g.*, *Perry*, 956 N.E.2d at 60 (holding erroneous admission of evidence of defendant's prior arrests was not harmless).

## 2. Retrial

While we reverse Griffith's conviction based on the trial court's erroneous admission of evidence, we must nonetheless still address his argument that the State presented insufficient evidence to sustain his conviction because our resolution of that issue impacts whether the State may retry him. *See Yeary v. State*, 186 N.E.3d 662, 681 (Ind. Ct. App. 2022) ("Because we reverse Yeary's conviction for procedural error, we must determine whether the State presented sufficient evidence to sustain Yeary's conviction, as that issue impacts whether the State may retry Yeary."). "The general rule is that retrial of a defendant is permissible when the conviction is reversed on grounds other than sufficiency of the evidence." *Calvert v. State*, 14 N.E.3d 818, 823 (Ind. Ct. App. 2014). "In deciding whether retrial is permissible, we consider all of the evidence admitted by the trial court, including the erroneously admitted evidence. If that evidence as a whole would have been sufficient to sustain the judgment, double jeopardy does not attach." *Berry v. State*, 725 N.E.2d 939, 944 (Ind. Ct. App. 2000) (internal citations omitted). When assessing the sufficiency of the evidence to support a conviction, "we neither reweigh the evidence nor judge witness credibility. Rather, we consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence." *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020) (internal citation omitted).

Indiana Code section 35-42-4-3 provides:

> (a) A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual

intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits child molesting, a Level 3 felony. However, the offense is a Level 1 felony if:

(1) it is committed by a person at least twenty-one (21) years of age[.]

"'Other sexual conduct' means an act involving . . . a sex organ of one (1) person and the mouth or anus of another person[.]" Ind. Code § 35-31.5-2-221.5.

[26] Griffith contends the State failed to present sufficient evidence that sexual conduct occurred between Griffith and O.S. However, "[t]he testimony of a sole child witness is sufficient to sustain a conviction for molestation." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012), *reh'g denied*. O.S. stated in the forensic interview that the person who molested her was named Josh, lived with Emily, and was G.G.'s father. She explained he made her put her mouth on his penis and his penis went all the way into her mouth. Thus, a reasonable trier of fact could conclude from O.S.'s comments in the forensic interview that Griffith had molested her, and therefore, the State is not barred from retrying Griffith. *See, e.g.*, *Albee v. State*, 71 N.E.3d 856, 864 (Ind. Ct. App. 2017) (holding double jeopardy did not prohibit the defendant's retrial when the State presented sufficient evidence to sustain the defendant's conviction).

## 3. Forensic Interview

[27] While we reverse Griffith's conviction on other grounds, we nonetheless choose to also address one other issue raised by Griffith because it is likely to present

itself on retrial. *See, e.g., D.R.C.*, 812 N.E.2d at 1138-1142 (addressing issues likely to present themselves on retrial after reversing conviction on other grounds). Griffith contends the trial court erroneously admitted hearsay when it allowed the State to read the transcript of O.S.'s forensic interview into evidence after O.S. testified she could not remember the molestation well enough at the time of trial to testify fully and accurately about it.

[28] Rule of Evidence 801 states that "hearsay" is a statement "not made by the declarant while testifying at the trial or hearing" that "is offered in evidence to prove the truth of the matter asserted." Rule of Evidence 802 generally prohibits the introduction of hearsay evidence, but that Rule is subject to several exceptions. Rule 803(5) defines the exception to the rule against hearsay for recorded recollections, and it allows the admission of a record if it:

> (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and
>
> (C) accurately reflects the witness's knowledge.

We review a trial court's decision to allow hearsay evidence pursuant to one of the exceptions to the rule against hearsay for an abuse of discretion. *McMillen v. State*, 169 N.E.3d 437, 441 (Ind. Ct. App. 2021). Griffith contends reading the forensic interview into evidence was error because the State failed to

demonstrate the forensic interview satisfied the second and third requirements of Rule 803(5).

[29] Regarding the second requirement, Griffith asserts O.S.'s statements in the interview were not made when the matter was fresh in her memory because she made the statements when she was four years old about an event that occurred approximately one year earlier. He also argues the statements were not reliable because "[t]he farther a person is from the occurrence, the more likely the memory is mixed with newer memories, especially for young children." (Appellant's Br. at 34.) However, the forensic interview occurred within one week of when O.S. disclosed the abuse to Christina. As the State notes, "[t]he plain language of the rule is not addressed to the timing of the event but rather to the freshness of the declarant's recollection of the event." (Appellee's Br. at 31.) O.S. spontaneously disclosed the abuse to her mother when discussing arranging a play date with G.G., and we agree with the State that "[i]f she had a fresh memory of playing with G.G., there is no reason why she could not also have a fresh memory of G.G.'s father and of what he did to her during that same time frame." (*Id*. at 33.) Moreover, O.S. included several details in her description of the molestation during the forensic interview, which indicates it was fresh in her mind at that time. She identified the person who molested her as an adult who was the father of G.G., and she stated the molestation occurred in the bathroom/hallway of the house where he lived with G.G. All of these details suggest "the matter was fresh" in O.S.'s memory as required to satisfy Evidence Rule 803(5)(B).

[30] Regarding the third requirement, Griffith contends the State failed to prove the interview accurately reflected O.S.'s knowledge. Griffith argues "[s]imply stating she watched the video and told the truth is not enough, especially when O.S. did not identify the defendant as the man she was accusing." (Appellant's Br. at 38.) We disagree. Not only did O.S. say she watched the video, but she identified herself in the video. She testified the interview occurred when O.S. remembered the events better and she told the truth to the interviewer. A witness's statement that she told the truth in a forensic interview is generally sufficient to satisfy the third requirement of Rule 803(5). *See, e.g.*, *Gorby v. State*, 152 N.E.3d 649, 653 (Ind. Ct. App. 2020) (holding victim adequately vouched for the accuracy of statements she made in forensic interview when she said she told the forensic interviewer the truth).

[31] Because all three requirements of Evidence Rule 803(5) were met, the trial court did not abuse its discretion when it allowed the State to read the transcript of O.S.'s forensic interview into evidence. *See, e.g.*, *Horton v. State*, 936 N.E.2d 1277, 1283 (Ind. Ct. App. 2010) (holding trial court did not err in admitting videotaped interview under recorded recollection exception to the hearsay rule when witness said she told the truth in the videotaped statement but could not recall specific information at the time of her testimony), *summarily aff'd in relevant part*, 949 N.E.2d 346, 347 n.2 (Ind. 2011) (citing App. R. 58(A)(2)).

## Conclusion

[32] The trial court committed a reversible error when it allowed the State to question Griffith about an unsubstantiated allegation of child abuse, and we accordingly reverse Griffith's conviction. Retrial will not violate Griffith's right against double jeopardy because the evidence presented at his trial was sufficient to support a conviction, and – because the issue will likely present itself on retrial – we hold the trial court did not abuse its discretion when it allowed the State to read a transcript of O.S.'s forensic interview into evidence. Therefore, although we reverse Griffith's conviction, we remand for further proceedings consistent with this opinion.

[33] Reversed and remanded.

Brown, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana